W. K. KING et al., Appellants,

v.

Donald FLOYD et al., Appellees.

No. 16702.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 13, 1976.

Rehearing Denied June 3, 1976.

 

Bruce L. James, Houston (Saccomanno, Clegg, Martin & Kipple, Houston, of counsel), for appellant W. K. King.

Robert R. Truitt, Jr., Midland (Turpin, Smith & Dyer, Midland, of counsel), for appellant First National Bank of Midland.

James H. Campbell, The Kempers, T. M. Kemper, Houston, for appellees.

COLEMAN, Chief Justice.

This is an appeal from a judgment entered in a garnishment action. W. K. King obtained a money judgment against Donald Floyd in the County Civil Court at Law No. 1 of Harris County, Texas. On King's application a writ of garnishment was issued to the Houston Oilers, Inc. The Oilers answered admitting owing $11,422.00 together with interest, to a Donald Wayne Floyd and tendered said amount into the registry of the court interpleading Donald Wayne Floyd. Floyd answered contending that the money in the registry of the court constituted current wages for personal service and, therefore, was exempt from garnishment. The First National Bank of Midland intervened alleging that it was the owner of a judgment against Don Floyd issued by the District Court of Midland County, Texas, and prayed that funds in the registry be applied to satisfy this judgment.

All parties filed motions for summary judgment. The court concluded that the funds were exempt from garnishment and entered summary judgment that the proceeds be released to Donald Floyd.

Vernon's Annotated Texas Constitution Article XVI, Section 28, states:

"No current wages for personal service shall ever be subject to garnishment."

Vernon's Annotated Civil Statutes Article 4099 states:

"No current wages for personal service shall be subject to garnishment; and where it appears upon the trial that the garnishee is indebted to the defendant for such current wages, the garnishee shall nevertheless be discharged as to such indebtedness."

During the year 1968 Donald Floyd was employed by the Houston Oilers as a professional football player under a written contract. While playing football for the Oilers, Floyd suffered an injury to his right ankle. He was examined by the team physician who certified that he was unable to play football and was placed on the inactive player list on or about August 23, 1968. On September 30, 1968, Floyd was notified by the trainer for the Houston Oilers that he had been returned to the active player list. On October 2, 1968, Floyd's contract was terminated. After that date Floyd did not perform any services for the garnishee.

Thereafter Floyd filed suit against the Houston Oilers alleging a breach of his contract with the Oilers. He alleged that his contract was terminated at a time when he was physically unable to perform as a football player because of an injury suffered in a football game. He specifically alleged Paragraph 14 of his contract which provided that in the event he was injured in the performance of his services under the contract the Oilers would continue during the term of the contract to pay him his salary so long as in the opinion of the club physician the player, because of such injury, was unable to perform the services required of him. The contract provided for an annual salary payable in installments. Floyd recovered a judgment for the balance due on such annual salary. The Oilers appealed and the judgment was affirmed by the Court of Civil Appeals. The Supreme Court of Texas refused an application for writ of error on May 28, 1975. King applied for the writ of garnishment on June 3, 1975.

To qualify the funds deposited in the registry of the court as being exempt from garnishment the evidence must establish that the money was due to Floyd as "current" wages and also as remuneration for "personal service." The exemption applies without regard to whether the compensation be called "wages" or "salary." The controlling issue in this case is whether or not the fund is the proceeds of, or compensation for, personal service. The money

was not voluntarily left by Floyd in the hands of the garnishee. It never came into the control of Floyd. Thus, the question of whether the funds, if wages, constitute "current" wages is settled. *Bell v. Indian Livestock Co.*, 11 S.W. 344 (Tex.1889); *Smith v. Bradshaw*, 105 S.W.2d 340 (Tex. Civ.App.—Dallas 1937, no writ history); *J. M. Radford Grocery Co. v. McKean*, 41 S.W.2d 639 (no writ history).

In the *McKean* case, supra, the court stated that the exemption statute should be liberally construed in favor of the wage earner. There the court held that a bonus or commission payable to a salesman at the end of year in addition to the salary paid monthly was exempt from garnishment as the current wage for personal service.

In *Brasher v. Carnation Co. of Tex.*, 92 S.W.2d 573 (Tex.Civ.App.—Austin, 1936, no writ history), the court stated that the term "wages for personal service" necessarily implies a relationship of master and servant, or employer and employee, and excludes compensation due to an independent contractor as such. There the court found that the party urging the exempt status of a fund due to him under a contract to collect milk for delivery to the Carnation Company occupied the status of an independent contractor, and the fund was not exempt, even though such party did the work personally.

Here we have a contract under the terms of which Floyd agreed to perform personal services for the Houston Oilers, and in return the Houston Oilers agreed to pay him a stated salary for his services during the football season. Paragraph 3 of the contract reads as follows:

"3. For: the Player's services as a skilled football player during the term of this contract his agreement not to play football or engage in activities related to football for any other person, firm, corporation or institution during the term of this contract; the option hereinafter set forth giving the Club the right to renew this contract; and all other undertakings of the Player herein; the Club promises, . . . to pay the Player each football

season during the term of this contract . . . ."

Among the other obligations assumed by Floyd by the terms of the contract is one prohibiting him from engaging in any sport other than football without the consent of the club.

As previously noted, the contract provided that the club would continue to pay the injured player his salary "so long as it is the opinion of the club Physician that the player, because of such injury, is unable to perform the services required of him." The contract also provides:

"All matters in dispute between the player and the club shall be referred to the Commissioner and his decision shall be accepted as final, complete, conclusive, binding and unappealable, by the player and by the club."

In *Houston Oilers, Inc. v. Floyd*, 518 S.W.2d 836 (1975), this court held that the Houston Oilers breached its contract with Floyd and affirmed the judgment of the trial court awarding Floyd $14,240.00, representing the remaining salary to which he was entitled under the terms of the contract. In his petition in that suit Floyd alleged that on the date that he was removed from the injured reserve list and placed on the active player list by the team trainer he was, and as been at all times since, physically unable to play professional football as the result of the injuries received on the 23rd day of August, 1968, in a football contest with the Buffalo Bills in Tulsa, Oklahoma.

The evidence establishes that the judgment which Floyd recovered against the Houston Oilers was for the salary due him under the terms of the contract. The failure of an employer to pay his employee the wages due him under a contract, whether written, oral, or implied in law, would constitute a breach of contract. A judgment recovered by an employee of the agreed compensation for past service performed, whether denominated damages or not, would nevertheless constitute an indebtedness due to the employee from the employer for personal services within the meaning of the Constitution and laws of this State. The contract in this case contemplated the fact that the player might be injured because of the nature of the services which he agreed to render. Payments made to the player after his injury rendered him unable to compete might be considered additional compensation for the services previously rendered. We construe the agreement to continue the salary during the period that the player is physically incapacitated to be in the nature of a bonus for satisfactory service. Under this construction of the contract the funds in the registry of the court are "current wages for personal service" and are exempt from garnishment.

The judgment of the trial court is affirmed.