**GENERAL ELECTRIC CAPITAL CORPORATION and Morris Tabak, Appellants**

v.

**ICO, INC., Timothy J. Gollin, and Weycer Kaplan Pulaski & Zuber, P.C., Appellees.**

No. 14–05–01095–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 12, 2007.

Morris Tabak, Jamal A. Asafi, Houston, for appellants.

Charlotte Jean Fischer, Richard Kaplan, Tanya Nicole Garrison, Houston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and FROST.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

Appellants, General Electric (GE) and Morris Tabak, appeal the trial court's granting of a motion to dissolve a writ of garnishment in favor of appellees, ICO, Inc. (ICO), Timothy Gollin, and Weycer Kaplan Pulaski & Zuber, P.C. GE and Tabak bring three issues on appeal: 1) whether the trial court erred in granting the motion to dissolve on the basis that the garnished funds were exempt as current wages for personal service; 2) whether it was error to grant attorney's fees in favor of Gollin against GE and Tabak; 3) and whether the court reversibly erred in not filing findings of fact and conclusions of law as requested. We affirm the dissolution of the writ, but reverse the trial court's award of attorney's fees to Gollin.

### Factual and Procedural Background

In June of 2001, Gollin began working for ICO as Chief Executive Officer. Gollin's employment agreement stated that he would receive a severance package should his contract not be renewed. The contract stated that Gollin would be entitled to a severance package equal to one time his base salary immediately prior to his nonrenewal. The contract did not, however, specify any details of the payment, such as its timing or whether it would be paid in a lump sum or over time. After the end of his contract term, Gollin was unable to reach an agreement with ICO concerning renewal. Gollin and ICO agreed that his nonrenewal entitled Gollin to severance pay. ICO proposed to pay the severance over a full year, but Gollin requested a lump sum payment. The two entered into a compromise agreement, stating that ICO would pay the severance over a six month period.

In the meantime, GE obtained a judgment against Gollin in the United States

District Court for the Southern District of Texas in November of 2001 for $389,102. GE pursued a garnishment in state court against ICO, who owed Gollin the severance payment, which was equivalent of one year's salary, or $247,000. The trial court issued a writ of garnishment, and thereafter Gollin filed a motion to dissolve the writ pursuant to Rule 664a of the Texas Rules of Civil Procedure. He argued that the garnished severance payments were current wages and, as such, were exempt under the Texas Constitution, the Texas Civil Practice and Remedies Code, and the Texas Property Code. ICO then answered the writ, admitting its indebtedness, but pleading as a defense that the amount constituted Gollin's current wages.

The trial court entered an order dissolving the writ, stating in its order that it found the motion to dissolve meritorious. The court further ordered that GE and Tabak would pay $3,500 in attorney's fees to Gollin's counsel, Weycer, Kaplan, Pulaski, & Zuber, P.C. Following this order, GE requested findings of fact and conclusions of law. The trial court never responded to this request.[1]

## Analysis

### I. The Writ Was Not Improperly Dissolved

#### A. Standard of Review

█ Precedent from this court dictates that we apply an abuse of discretion standard to resolve whether the dissolution of a writ of garnishment was improvidently granted. *See Am. Express Travel Related Servs. v. Harris,* 831 S.W.2d 531, 533 (Tex. App.-Houston [14th Dist.] 1992, no writ); *see also Kyanize Parts, Inc. v. Denton,* No. C14–91–00705–CV, 1992 WL 105764, at *5 (Tex.App.-Houston [14th Dist.] May 21, 1992, no writ) (not designated for publication). A trial court abuses its discretion if it acts without reference to guiding rules or principles, or in an arbitrary or unreasonable manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

### B. No Abuse of Discretion in Holding Severance Was Current Wages for Personal Services

Under Rule of Civil Procedure 664a, a defendant whose property or account has been garnished may seek to vacate, dissolve, or modify the writ of garnishment for any grounds or cause, extrinsic or intrinsic. One such ground, under Texas law, is the exemption from garnishment for "current wages for personal service." TEX. CONST. art. XVI, § 28; TEX. CIV. PRAC. & REM.CODE § 63.004; *see also* TEX. PROP. CODE § 42.001.

█ "The garnishment exception for current wages applies without regard to whether compensation is denominated as 'wages' or 'salary,' the controlling issue being whether it is compensation for personal service." *Davidson Texas, Inc. v. Garcia,* 664 S.W.2d 791, 793 (Tex.App.-Austin 1984, no writ). This exception should be liberally construed in favor of the wage earner. *Id.* (citing *J.M. Radford Grocery Co. v. McKean,* 41 S.W.2d 639, 640 (Tex.Civ.App.1931, no writ); *see also Hickman v. Hickman,* 149 Tex. 439, 234 S.W.2d 410, 413 (1950)) (stating "[O]ur exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant").

1. We note that Morris Tabak passed away during the pendency of this appeal. We proceed with determining the merits of the appeal and render judgment as if he were alive. *See* TEX.R.APP. P. 7.1(a).

■ The record tells us only that the initial employment agreement between Gollin and ICO required ICO to pay Gollin a severance package if the parties were unable to reach an agreement regarding contract renewal. It was the job of the court below, and it is our job now, to construe whether such an agreement is for "personal services." GE and Tabak point to language in a supplemental agreement between Gollin and ICO, which states that the severance will be owed upon termination of the employment relationship. But this language only states when the severance must be paid, not why the severance was owed. GE and Tabak also cites language from the original employment agreement as proof that the severance package was payment for continuing obligations, such as nondisclosure and agreement not to sue ICO. However, this cited contract provision deals with the severance package that would have been owed had Gollin's employment been terminated other than by non-renewal. The severance package in this case was owed pursuant to different contractual provisions—provisions which did not describe why the severance was owed. Therefore, we look to case law for guidance in construing whether severance payments are for personal services.

In *Radford*, a grocery store was garnished for an amount owing to its employee, Tinsley. 41 S.W.2d at 639. Tinsley's contract provided that he would earn a set amount of money per month, and if Tinsley met the condition of remaining with the grocery store for more than one year, he would be paid an additional bonus, based on a percentage of his sales. *Id.* The trial court allowed the garnishment based on the idea that any amount over and above his hourly wage did not constitute "current wages for personal services." *Id.* The appellate court reversed, relying on the liberal construction to be given exemption statutes. It held that the payment was

current wages for personal services within the meaning of the Constitutional and statutory exemptions because the payment was additional consideration for Tinsley's services. *Id.* at 640.

*King v. Floyd* extended the *Radford* line of reasoning. In *King*, a football player's contract contained a provision that he would be paid while he was injured, so long as the team physician opined that the player was unable to perform due to his injuries. 538 S.W.2d 166, 169 (Tex.Civ. App.-Houston [1st Dist.] 1976, writ ref'd n.r.e.). The court held that the payments made to the player after his injury rendered him unable to compete *might be* considered additional compensation for the services previously rendered, and construed the continuation of salary to be in the nature of a bonus for satisfactory service. *Id.*

■ The liberal construction in favor of express exemptions, as illustrated in *Radford* and *King*, controls our disposition of this issue. When no contradictory contract language exists, we hold that a severance payment should be liberally construed as a bonus for satisfactory service, since such payments might be considered additional compensation for services previously rendered. Here, although the payment of the severance is an amount over and above Gollin's normal salary, the contract does not state that the money is for something other than services already rendered.

■ Therefore, because of the general rule that we apply the exemption laws liberally, and because this contract does not clearly state that the severance payment was for something other than personal services, and because courts have found severance agreements to qualify as current wages for personal service, the trial court acted within its discretion when it found that the severance payment was in

the nature of current wages for personal service.[2]

**C. No Abuse of Discretion in Holding That Severance Did Not Lose Exempt Status**

GE and Tabak argue that even if the severance constituted current wages when it was owed, it lost its exempt status when Gollin agreed to "leave" part of the severance with ICO to be paid over time. While it is true that an exemption may be lost under certain circumstances, those circumstances are not present here.

**1. Current Wages Exemption May Be Lost**

■ The protection of the constitutional exemption may be lost when the wages are under the control of the employee and the employee voluntarily leaves them with his employer or collects and deposits them with someone else. *Davidson v. F.H. Logeman Chair Co.*, 41 S.W. 824, 825 (Tex. Civ.App.1897, no writ); *see also Sloan v. Douglass*, 713 S.W.2d 436, 440 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.) (stating that voluntariness and control are both elements to be considered in deciding if wages are exempt).

The seminal case on the subject of losing current wages status is *Bell v. Indian Live–Stock Co.*, 11 S.W. 344 (Tex.1889). In *Bell*, the employee was paid a wage of $200 per month, but left his money with his employer and drew funds only as he needed them. *Id.* at 344–45. The court held that the sum of $624.50, which had accrued in the employee's account with his employer, had lost its exempt status because the wages were no longer current. *Id.* at 346.

*Davidson v. F.H. Logeman Chair Co.* presented a similar issue. There, an employee was being paid $75 per month, but had not been collecting his pay as it became due. The court held that the wages which were past due and in the hands of the employer were subject to garnishment, but the amount due for the month of September, which the employee was unable to collect and was not voluntarily left with the employer, was still exempt as current wages. *Davidson*, 41 S.W. at 825.

A third case, *Sloan v. Douglass*, reiterates that control and voluntariness are the two elements to be considered in whether the current wages exemption has been destroyed. In deciding whether a baseball player's deferred compensation lost its exemption, the court said, "Appellants attach great emphasis to the fact that appellee voluntarily left his wages with the Rangers. Voluntarily leaving wages with one's employer is only one element ... as other cases discuss control over the wages as being an additional element to be considered." *Sloan*, 713 S.W.2d at 440.

**2. GE and Tabak Rely On *Sloan***

GE and Tabak rely exclusively on language in *Sloan* to support their contention that Gollin's severance lost its exempt status when Gollin agreed to have it paid over a six month period. In *Sloan*, a baseball player signed a contract with the Texas Rangers baseball club for services to be rendered over a five year period. *See id.* at 438. His salary in the third, fourth and fifth year was substantially increased, but he agreed to receive most of the increased amount over a ten year period, beginning after the five year contract term was over.

2. GE also argues that the definition of "severance" in the Texas Administrative Code controls in deciding whether severance fits within the definition of current wages. We hold that the definition, which relates to the Texas Payday Rules, does not apply here. *See Brook-* shire v. Houston Indep. Sch. Dist., 508 S.W.2d 675, 677–78 (Tex.Civ.App.-Houston [14th Dist.] 1974, no writ) (holding that a word defined in one act does not necessarily determine the word's meaning in another act dealing with a different subject).

*See id.* The court acknowledged that the appellee voluntarily signed the contract. *Id.* at 440. However, in the part of the opinion GE and Tabak now rely on, the court stated that the "contract was signed *before* appellee had any right to or any control over the money." *Id.* (emphasis added). The court held that although his salary deferral may have been voluntary, appellee never had any control over the money, and his wages did not lose their exempt status. *See id.* at 440–41.

### 3. Unlike *Sloan,* Gollin's Agreement to Defer Was Not "Voluntary"

 Although we do not adopt the *Sloan* standard as controlling in this instance, to the extent it is applicable, it is distinguishable. In *Sloan,* voluntariness was a given. The contract deferring payment in that case was signed freely and before any services were rendered or money paid. In this case, however, voluntariness is not a given. When wages are left with an employer due to an inability to collect them, they are not left voluntarily. *Davidson,* 41 S.W. at 825. Another court has held:

> the purpose of the constitutional provision, is to exempt the wage until it is due and is in possession of the wage-earner, provided that, if he is unable to collect same when due, the exemption then continues to such time when he can collect same in the exercise of ordinary diligence.

*Lee v. Emerson–Brantingham Implement Co.,* 222 S.W. 283, 284 (Tex.Civ.App.-Dallas 1920, no writ). Here, at the end of his employment, Gollin demanded payment immediately in a lump sum, but ICO would not acquiesce. After negotiations, Gollin and ICO agreed that payments would be made over a six month period. Clearly, the inability to collect the entire sum was not of Gollin's own choosing. It was involuntary.

GE and Tabak would have us hold that Gollin did not exercise ordinary diligence to collect his severance payment and therefore the wages lost their exempt status because he agreed to a payout of the wages when his employer refused to pay in a lump sum. GE and Tabak appear to maintain that Gollin must have sued immediately when ICO did not pay the full amount. This claim would require us to conclude that when an employer and employee have a legitimate dispute over the payout of wages, an employee's choice to negotiate to obtain the money due and owing does not qualify as the exercise of ordinary diligence; something more is required. But, if negotiations do not constitute ordinary diligence, the alternative is a lawsuit. This is an extreme position we are unwilling to adopt.

GE and Tabak have not cited any opinion in which a court held that (1) one who chose to negotiate before suing failed to use ordinary diligence, or (2) the wages the employer held should lose their exempt status. Suit should not be the only alternative available to an employee to preserve the exempt status of wages. GE and Tabak's position ignores the many authorities-including courts-that recognize the value of negotiations and other forms of alternative dispute resolutions. *See, e.g.,* Tex. Civ. Prac. & Rem.Code § 154.002 ("It is the policy of this state to encourage the peaceable resolution of disputes . . . ."); *id.* § 154.003 (placing burden of implementing policy on the courts); *L.H. Lacy Co. v. City of Lubbock,* 559 S.W.2d 348, 352 (Tex. 1977) (holding that a policy of encouraging arbitration agreements is preferable in order to alleviate court congestion); *Hansen v. Sullivan,* 886 S.W.2d 467, 469 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding) (citing section 154.002 of the Civil Practice and Remedies Code for Texas's general policy favoring peaceable dispute resolution).

Thus, for purposes of maintaining the exempt status of wages, we refuse to hold that an employee who negotiates with his employer to secure payment of wages held by the employer has not exercised ordinary diligence. And we hold that an employee does not voluntarily leave money with an employer when the employee negotiates, rather than sues, to force the employer to pay the wages owed.

### 4. Right to Payment Is Not Sufficient To Meet Control Prong

 Still assuming that the *Sloan* standard is applicable, we now turn to the second element—control. Appellant asks us to construe language in *Sloan* to mean that a contractual right to payment[3] is sufficient control to destroy the exemption.

Again, GE and Tabak's position is unsupported by the case law. No precedent holds that a simple right to payment constitutes a right of control sufficient to destroy the current wages exemption. In the leading cases in this area, the exemption has been held destroyed only when the employee has treated his employer as a bank-accruing funds and drawing them out only as needed. *See, e.g., Davidson,* 41 S.W. at 825; *Bell,* 11 S.W. at 346. Clearly that was not the case here, when Gollin agreed to be paid over time, at intervals, not as a matter of convenience for himself, but because it was the only way ICO would agree to pay him. Besides the situation presented in *Bell* and *Davidson,* courts have said the exemption is destroyed only when there has been "receipt" or "possession" of wages. *See, e.g., Brink v. Ayre,* 855 S.W.2d 44, 45 (Tex. App.-Houston [14th Dist.] 1993, no writ); *Caulley v. Caulley,* 777 S.W.2d 147, 151 (Tex.App.-Houston [14th Dist.] 1989), *aff'd in part, rev'd in part,* 806 S.W.2d 795

(Tex.1991); *Cain v. Cain,* 746 S.W.2d 861, 862–63 (Tex.App.-El Paso 1988, writ denied); *Salem v. Am. Bank of Commerce,* 717 S.W.2d 948, 948–49 (Tex.App.-El Paso 1986, no writ); *Smith v. Bradshaw,* 105 S.W.2d 340, 341 (Tex.App.-Dallas 1937) *aff'd,* 130 Tex. 180, 108 S.W.2d 200 (1937); *Sutherland v. Young,* 292 S.W. 581, 583 (Tex.Civ.App.-Waco 1927, no writ). Control is not established merely because ICO was bound by the contract to pay Gollin the severance funds. As we noted earlier, ICO and Gollin had a legitimate dispute as to how the funds were to be paid—in one lump sum or over time. Gollin resorted to negotiations to resolve the dispute. The fact that he received the money over time rather than in one lump payment—his desired form of payment—shows that he did not exercise control over the funds.

As we have already noted, the funds were not left voluntarily, and since Gollin did not exercise control over the funds, the severance did not lose its exemption, and the trial court did not abuse its discretion by dissolving the writ. We overrule GE and Tabak's first issue.

### II. Attorney's Fees Reversed

 The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex. 1999). We review questions of law de novo. *Tex. Dep't of Transp. v. Needham,* 82 S.W.3d 314, 318 (Tex.2002). "An award of attorney's fees may not be supplied by implication but must be provided for by the express terms of the statute in question." *First City Bank–Farmer's Branch, Texas v. Guex,* 677 S.W.2d 25, 30 (Tex. 1984). Rule 677 of the Texas Rules of

---

3. When we say "right to payment" we do not imply that the payment was due immediately. We mean simply that under the contract language, because of the non-renewal of his contract, Gollin was entitled to receive a severance package.

Civil Procedure governs cost allocation in a garnishment proceeding. It states:

> Where the garnishee is discharged upon his answer, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant and included in the execution provided for in this section; where the answer is contested, the costs shall abide the issue of such contest.

Tex.R. Civ. P. 677. The term "costs" in this rule has repeatedly been interpreted as including attorney's fees. *E.g.*, *Rowley v. Lake Area Nat'l Bank*, 976 S.W.2d 715, 721 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *Moody Nat'l Bank v. Riebschlager*, 946 S.W.2d 521, 525 (Tex.App.-Houston [14th Dist.] 1997, writ denied); *Henry v. Ins. Co. of N. Am.*, 879 S.W.2d 366, 369 (Tex.App.-Houston [14th Dist.] 1994, no writ).

■■■ Gollin cites to *Rowley* for the proposition that when a garnishee's answer is contested, costs should be awarded to whomever prevails in the contest, whether garnishee or garnishor. *See Rowley*, 976 S.W.2d at 722. To the extent Rule 677 applies here,[4] this court is bound by *Henry v. Insurance Co. of North America*. *See* 879 S.W.2d at 369. In *Henry*, this court held that Rule 677 only gave a garnishee the right to recover attorney's fees, and nothing in the rule allows a garnishor to recover attorney's fees from a debtor. *Id.*

This case is exactly like *Henry*, except here it is the debtor who is seeking attorney's fees under Rule 677. The rule does not provide for a debtor to recover attor-

ney's fees, any more than it provides for a garnishor's recovery of fees. Therefore, since we may not supply authority to award attorney's fees by implication, we hold that the trial court had no authority under Rule 677 to award attorney's fees to Gollin. *See id.*

Gollin argues in the alternative that the award of attorney's fees to him was proper under Rule 664a, since that rule provides that a court "may make all such orders . . . as justice may require." However, as stated above, it has long been the rule in Texas that unless provided for by contract, an award of attorney's fees must be provided for by the express terms of the statute in question. *Guex*, 677 S.W.2d at 30. A rule stating that a court may "make orders" as "justice requires" falls well short of the specificity required to support an award of attorney's fees. *See, e.g., Holland*, 1 S.W.3d at 95–96 (stating that a statute providing for recovery of "reasonable damages" was not specific enough to include the accrual of attorney's fees). We therefore sustain appellants' second issue, and reverse the portion of the trial court's judgment awarding attorney's fees to Gollin.

## III. No Findings of Fact or Conclusions of Law Were Necessary

■■■ GE and Tabak's third issue contends that the trial court harmfully erred in not filing findings of fact and conclusions of law. Rule 296 provides that "[i]n any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX.R. CIV. P. 296. Rule 296 gives a party a right to findings of fact and conclusions

---

4. Rule 677 may not apply in this case at all. By its plain language, it applies where a garnishee is discharged on his answer, held on his answer, or his answer is contested. *See* TEX.R. CIV. P. 677. Here, the court dissolved the writ based on a motion by the debtor, not based on the resolution of a contest as to the garnishee's answer.

of law after a conventional trial on the merits before the court. *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex.1997). In all other cases, findings of fact and conclusions of law are proper, but a party is not entitled to them. *Id.* A case is "tried" when a court holds an evidentiary hearing. *Puri v. Mansukhani*, 973 S.W.2d 701, 708 (Tex. App.-Houston [14th Dist.] 1998, no pet.) (citing *Besing v. Moffitt*, 882 S.W.2d 79, 81–82 (Tex.App.-Amarillo 1994, no writ)). In this case, there was no evidentiary hearing, and therefore no "trial on the merits." As such, there could have been no findings of fact, and any conclusions of law would have been only advisory, and were, therefore, unnecessary. *See IKB Indus.*, 938 S.W.2d at 442.

 Even if findings of fact and conclusions of law were necessary, it would not change our holding because the error, if any, has not prevented the appellants from properly presenting their case to us. *See Elliott v. Kraft Foods N. Am., Inc.*, 118 S.W.3d 50, 54–55 (Tex.App.-Houston [14th Dist.] 2003, no pet.). The controlling issue is whether the circumstances of the particular case would require an appellant to guess at the reasons for the trial court's decision. *Id.* at 54. Here, GE and Tabak knew that the court based its decision on the current wages exemption because that was the only argument set forth in Gollin's motion to dissolve the writ. The trial court's order specifically stated that it dissolved the writ of garnishment because it found the motion had merit. Thus, the reason set out in the motion was the reason for the trial court's judgment. We overrule appellant's third issue.

## Conclusion

Having overruled GE and Tabak's issues one and three and sustained their second issue, we affirm the order of the trial

court, except for the award of attorney's fees to Gollin, which portion of the order is reversed.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The court reaches the correct result in concluding that the trial court did not err in dissolving the writ of garnishment, but the majority's reasoning goes beyond what is necessary to resolve the narrow issue before this court.

### FACTUAL AND PROCEDURAL BACKGROUND

Effective June 21, 2001, appellee Timothy Gollin and appellee ICO, Inc. entered into an employment agreement under which ICO employed Gollin as its Chief Executive Officer (hereinafter "Original Agreement"). The Original Agreement had an initial term of two years, after which the agreement was to continue on a year-to-year basis unless ICO gave Gollin notice at least sixty days before the end of the two-year period that it did not intend to renew the Original Agreement. If ICO gave this notice and if the Original Agreement were not renewed, then Gollin would be entitled to receive a severance benefit in the amount of his annual salary at the end of his employment. The Original Agreement does not specify when this amount would be due or exactly how it would be paid.

ICO gave Gollin the requisite notice that it did not intend to renew the Original Agreement after expiration of the initial two-year period.[1] At the time, Gollin's annual salary was $247,500; therefore, ICO was required to pay Gollin this amount some time after the end of the two-year period on June 20, 2003. However, despite ICO having given the sixty-day

---

**1.** This fact is reflected in the Supplemental Agreement.

notice under the Original Agreement, ICO and Gollin still thought that they might be able to come to a new agreement under which Gollin would continue as Chief Executive Officer. Nonetheless, as the expiration of Gollin's employment under the Original Agreement approached, the parties still were negotiating and wished to continue negotiating beyond June 20, 2003. To this end, effective June 19, 2003, the parties entered into an agreement (hereinafter "Supplemental Agreement") extending the expiration date of the Original Agreement to July 15, 2003, to allow time for more negotiation. On July 14, 2003, the parties amended the Supplemental Agreement to change all references to "July 15, 2003" to "August 15, 2003," potentially extending the term of Gollin's employment through August 15, 2003. Under the Supplemental Agreement as amended, notwithstanding anything to the contrary in the Original Agreement, in the event that Gollin terminated his employment with ICO on or before August 15, 2003, ICO agreed it would "owe [Gollin] severance pay equal to $247,500." Again, this agreement specified the amount but not the timing of the payment.

Effective July 17, 2003, Gollin resigned his employment, and therefore, under the amended Supplemental Agreement, ICO had to pay Gollin $247,500 at some point in time, but the parties had not explicitly agreed as to when this amount would be due. Gollin asserted that the entire amount was due on his last day of employment, whereas ICO wanted to pay this amount in installments over the one-year period after the end of Gollin's employment. Contemporaneous with the end of Gollin's employment on July 17, 2003, but effective July 18, 2003, ICO and Gollin entered into an agreement as to how this

severance would be paid (hereinafter "Final Agreement"). Under the Final Agreement, ICO agreed to pay Gollin $82,500 upon receipt of the signed agreement followed by six monthly installments of $27,500, beginning on August 15, 2003.

Although ICO made the first payment of $82,500, before the next payment came due on August 15, 2003, Hoard Gainer Industry Co., Ltd., a creditor of Gollin, served a writ of garnishment on ICO ("Hoard Gainer Action"). Due to the Hoard Gainer Action, ICO made no further payments to Gollin. The writ of garnishment in the Hoard Gainer Action was eventually dissolved without any payment having been made by ICO and without any determination as to whether the severance payments are exempt from garnishment. *See Hoard Gainer Indus. Co., Ltd. v. Gollin*, No. 01–03–01320–CV, 2005 WL 1646116, at *1–2 (Tex.App.-Houston [1st Dist.] July 14, 2005, pet. denied). Before the Hoard Gainer Action was completely resolved, however, appellant General Electric Capital Corporation served its writ of garnishment on ICO in this case. Due to the pendency of this action, ICO has not paid the remaining $165,000 to Gollin.

### ANALYSIS

The majority correctly determines that the severance payments owed by ICO to Gollin are "current wages for personal service" under the Texas Constitution and applicable Texas statutes.[2] The majority then turns to an alternative argument made by General Electric Capital Corporation and its garnishment counsel, Morris Tabak (hereinafter collectively the "General Electric Parties"). The General Electric Parties assert that, even if the severance payments are "current wages for

---

**2.** Although this court reviews a dissolution of garnishment writ under an abuse-of-discretion standard, the majority seems to overemphasize this standard, given that this case involves unambiguous agreements and undisputed evidence.

personal service," they have lost their exempt status because the day after they came due on July 17, 2003, Gollin agreed to defer the payment of these amounts. This argument fails based on the factual record before this court.

Gollin testified in his affidavit that he entered into the Final Agreement on July 17, 2003, contemporaneous with the termination of his employment, not the following day. No evidence in the record contradicts this testimony.[3] Agreeing to postpone the due date for "wages" before they are due does not fall under the line of cases on which the General Electric Parties rely. *See Bell v. Indian Live–Stock Co.*, 11 S.W. 344, 345 (Tex.1889) (stating that wages that had been exempt as "current wages for personal service" were no longer exempt "when the wages became past due"). Furthermore, even presuming for the sake of argument that Gollin did not enter into the Final Agreement until July 18, 2003, after the end of his employment the day before, the analysis does not change. Because the parties did not specify a time for payment of the $247,500, a reasonable time for performance of this obligation became an implied part of the parties' agreement. *See, e.g., Gulf Oil Corp. v. Reid*, 161 Tex. 51, 337 S.W.2d 267, 275 (1960) (stating that "[w]here no time is fixed for performance of any phase of a contract, the law necessarily will imply that it is to be performed within a reasonable time"). The record indicates that Gollin asserted that a reasonable time to pay this amount was all at once at the end

of his employment; ICO, however, apparently thought it was reasonable to pay in twelve monthly installments. Rather than agreeing to postpone payments by ICO that already were past due, the parties agreed to the future due dates for payments that previously were only due to be paid within a reasonable time after termination of employment on July 17, 2003. Therefore, even if there were a one-day gap between the end of Gollin's employment and the parties' signing of the Final Agreement, this would not mean that the severance payments were past due when Gollin entered into the Final Agreement.[4]

The General Electric Parties argue on appeal that even if the $165,000 ICO owes Gollin was initially exempt as current wages, this severance lost any exemption it had when Gollin agreed to the payment schedule while the severance allegedly was past due. As discussed above, this argument fails because there is no evidence in the record that the severance was past due when Gollin agreed to the payment schedule.[5] Therefore, the trial court did not err in rejecting this argument, regardless of whether *Sloan v. Douglass* correctly states the legal standard as to how to determine when this exemption is lost. *See* 713 S.W.2d 436, 440 (Tex.App.-Fort Worth 1986, writ ref's n.r.e.) (stating that "[v]oluntarily leaving wages with one's employer is only one element to be considered in deciding if wages qualify for the current wage exemption ... other cases discuss control over the wages as being an addi-

---

3. The Final Agreement states that it is effective July 18, 2003, but it does not state when the parties signed it.

4. If this court had to address whether Gollin voluntarily entered into the Final Agreement, the result would be contrary to the majority's analysis because there is no evidence in the record to support the conclusion that Gollin entered into this agreement involuntarily. *See ante* at pp. 708–09.

5. The General Electric Parties have not asserted that the severance payments are past due and no longer exempt because ICO has withheld payment for several years past the dates in the Final Agreement after having been served with two different writs of garnishment. Therefore, this court need not address this argument, which would lack merit even if the General Electric Parties had raised it.

tional element to be considered"); *see also Davidson v. F.H. Logeman Chair Co.*, 41 S.W. 824, 825 (Tex.Civ.App.-Beaumont 1897, no writ) (stating legal standard similar to that used in *Sloan*). Although the judgments rendered on appeal by the *Sloan* and *Davidson* courts were correct, it is not clear that the legal standard used in reaching these judgments is proper.

This court recites the *Sloan* legal standard as if it were the applicable law [6] and analyzes the instant case "to the extent [the *Sloan* legal standard] is applicable...." [7] *Sloan* is not binding precedent in this court, and it is unnecessary to analyze the *Sloan* factors of voluntariness and control to dispose of this case. The better course would be to conclude that the severance amount that ICO owes Gollin still constitutes exempt current wages for personal services because there is no evidence to support the General Electric Parties' assertion that the severance was past due when Gollin agreed to the payment schedule.

### Conclusion

The court correctly determines that the severance payments owed by ICO to Gollin are exempt as "current wages for personal service" under the Texas Constitution and applicable Texas statutes. The court correctly rejects the General Electric Parties' argument that Gollin lost this exemption. However, the court should reject this argument based on the undisputed evidence and unambiguous contracts in our record rather than on the analysis of the *Sloan* factors used by the majority.