# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00855-CV

**M. Jay Carter, Appellant**

**v.**

**Ernie Cline and Karen Cline, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-10-003100, HONORABLE JEFF L. ROSE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this garnishment proceeding, Ernie and Karen Cline (collectively "the Clines")
sought a writ of garnishment to satisfy two domesticated foreign judgments obtained against
M. Jay Carter for breach of contract.  Carter seeks to avoid enforcement of the domesticated
judgments on the ground that the underlying foreign judgments are interlocutory under the laws of
the jurisdiction in which they were rendered and are therefore not entitled to full faith and credit
under Texas's Uniform Enforcement of Foreign Judgments Act ("UEFJA"), Tex. Civ. Prac. & Rem.
Code Ann. §§ 35.001-.008 (West 2008).  The trial court held that Carter failed to timely challenge
the alleged defects in the domestication proceedings and therefore waived any objections to
enforcement of those judgments in Texas.  In seven issues on appeal, Carter contends that there was
no valid, subsisting judgment upon which garnishment could be based because the foreign judgments

were interlocutory and because there were procedural irregularities in the domestication proceedings. *See id.* § 63.001(3) (grounds for obtaining writ of garnishment). We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006 Carter, a Texas resident, entered into a contract to purchase the Clines' home in Little Rock, Arkansas. When Carter attempted to withdraw from the purchase agreement, the Clines sued him for breach of contract. Carter, in turn, sued both the realtor, Robert "Casey" Jones, and the real estate company, the Janet Jones Company, that represented him in the disputed real estate transaction (collectively "the Jones defendants"). The two cases were subsequently consolidated and proceeded to a jury trial in Pulaski County, Arkansas.

Before the Arkansas case was submitted to the jury, the trial judge directed a verdict in the Clines' favor regarding the existence of a contract with Carter. The Clines' remaining claims and Carter's claims against the Jones defendants were submitted to the jury on special interrogatories, with the jury awarding the Clines $42,500 in damages against Carter for breach of contract and awarding Carter $30,000 in damages based on the Jones defendants' negligence. On August 31, 2009, the trial judge issued a "Judgment" on the jury verdict (the "Jury Verdict Judgment"). There was no statement in the judgment that it was a final judgment, but the judgment addressed the claims between all the parties, recited that a jury trial had occurred, included the special interrogatories and jury verdict, and entered judgment on the verdict. The judgment did not indicate that there were any other issues, matters, or claims that remained pending before the court. Two months later, on October 19, 2009, the trial court entered an "Order" that awarded the Clines $85,266 in attorney's fees and costs, denied the Clines' request for prejudgment interest, denied

2

Carter's motion for judgment notwithstanding the verdict, and denied Carter's motion for attorney's fees and costs (the "Attorney's Fees Order"). The Jones defendants were not mentioned in this order. On November 13, 2009, Carter appealed the Jury Verdict Judgment and the Attorney's Fees Order as well as a November 12, 2009 order awarding Carter $59,756 against the Jones defendants for attorney's fees. There is no evidence in the record that Carter successfully posted security or a supersedeas bond to stay collection efforts pending appeal.

In an attempt to collect the amounts awarded in the Arkansas litigation, the Clines sought to domesticate the Arkansas judgments in Texas, where Carter resides. To that end, the Clines filed a petition to domesticate the Jury Verdict Judgment in Harris County Court at Law No. 4 on December 3, 2009. They filed a separate petition to domesticate the Attorney's Fees Order in Harris County Court at Law No. 1 on December 30, 2009. Along with the petitions, the Clines attached copies of the foreign judgments to be domesticated and attorney affidavits showing the names and last known post office addresses of the judgment debtor (Carter) and the judgment creditors (the Clines), in accordance with UEFJA requirements. *See id.* § 35.004. Neither petition included a certificate of authentication, as required by the UEFJA, *see id.* § 35.003, but the certificates of authentication were subsequently issued on February 1, 2010 for the Jury Verdict Judgment and January 26, 2010 for the Attorney's Fees Order. The Harris County Courts at Law issued abstracts of judgments in the domestication proceedings on December 11, 2009 and February 11, 2010, respectively.

Meanwhile, on December 28, 2009, the Arkansas trial court had ordered a new trial between Carter and the Jones defendants. Although that order did not affect the Clines' claims

3

against Carter, concerns were raised about the finality of the judgments in the Clines' favor. The Clines therefore sought an order from the Arkansas trial court severing their claims from Carter's claims against the Jones defendants pursuant to rule 54(b) of the Arkansas Rules of Civil Procedure. Under rule 54(b), when a case involves multiple claims or parties, the trial court may issue a certification of final judgment as to one or more but fewer than all of the claims or parties "upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express entry of judgment." Ark. R. Civ. P. 54(b)(1). Absent a properly executed certification,

> any judgment, order, or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the judgment, order, or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id.* 54(b)(2).

On April 28, 2010, the Arkansas trial court directed entry of a "Final Judgment" in the Clines' favor in the amount of $127,766, which consolidated both the Jury Verdict Judgment and Attorney's Fees Order into a single final judgment. The Final Judgment included the requisite rule 54(b) certification and fact findings, including a finding that "[a]s a result of the Court's order of a new trial between Carter and the Jones Defendants, the Clines' judgments are not final for purposes of appeal or collection." Despite this finding, the Clines did not seek to domesticate the Final Judgment or file the Final Judgment in the domestication proceedings at issue in this case.

4

Similarly, although Carter had notice that the Jury Verdict Judgment and Attorney's Fees Order had been domesticated in Texas and now contends that those judgments were interlocutory under Arkansas law, Carter never challenged the validity or finality of the Arkansas judgments in the Harris County domestication proceedings based on either the new trial order or the rule 54(b) final judgment. Likewise, Carter never sought to stay the domestication proceedings. *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.006.

With the domesticated judgments unchallenged, the Clines filed an "Application for Writ of Garnishment After Judgment" in September 2010, seeking to garnish $11,471.21 in funds that were being held by JP Morgan Chase Bank, N.A. (the garnishee) in Carter's account. The application was based on both the Jury Verdict Judgment and the Attorney's Fees Order. On October 1, 2010, more than eight months after the foreign judgments were domesticated, Carter challenged the validity and finality of the judgments for the first time by motion to dissolve the writ of garnishment. In response, the Clines asserted that Carter's complaints were untimely and had been waived. The trial court agreed with the Clines, denied Carter's motion to dissolve, and issued a judgment of garnishment in the Clines' favor against Chase in the amount of $10,871.21.[1] After the trial court denied Carter's motion to reconsider, this appeal ensued.

On appeal, Carter presents seven issues challenging the validity of the domesticated judgments underlying the writ of garnishment. In all of the issues, Carter contends that the domesticated judgments were invalid or not final because they were based on interlocutory foreign

---

[1] This figure represents a deduction of $600 for Chase Bank's costs and expenses, which were awarded to Chase in the judgment of garnishment.

judgments; therefore, he argues, the garnishment statute's requirement of a "valid, subsisting judgment" has not been satisfied. *Id.* § 63.001(3). In issue six, Carter also contends that the domesticated judgments were invalid or not final because the Clines failed to file the certificate of authentication and attorney's affidavit at the same time.

## DISCUSSION

A trial court's ruling on a motion to dissolve a writ of garnishment is reviewed for abuse of discretion. *General Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 705 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A trial court abuses its discretion if it acts without reference to guiding rules or principles or in an arbitrary or unreasonable manner. *Id.* In reviewing an order denying a motion to dissolve, we must determine whether the judgment creditor established the grounds provided for issuing the writ. Tex. R. Civ. P. 664a. Here, the Clines sought a writ of garnishment based on section 63.001(3) of the civil practice and remedies code, which provides that a writ of garnishment is available if "a plaintiff has a valid, subsisting judgment and makes an affidavit stating that, within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the judgment." Tex. Civ. Prac. & Rem. Code § 63.001(3). The central issue in this case is whether the Clines have a valid, subsisting judgment, which Carter challenges based on the interlocutory nature of the underlying foreign judgments and on procedural irregularities in the domestication proceedings.

***Uniform Enforcement of Foreign Judgments Act***

The United States Constitution requires that full faith and credit be given in each state to the public acts, records, and judicial proceedings of every other state. U.S. Cons. art. IV, § 1. In Texas, the UEFJA is the primary vehicle for enforcing a sister state's judgment[2] and applies to "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit." Tex. Civ. Prac. & Rem. Code Ann. § 35.001. A properly filed foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." *Id.* § 35.003(c). A judgment creditor seeking to enforce a foreign judgment bears the initial burden to present a judgment that appears on its face to be a final, valid, and subsisting judgment. *Mitchim v. Mitchim*, 518 S.W.2d 362, 364 (Tex. 1975). If the judgment creditor meets this burden, the filing of the foreign judgment not only initiates the enforcement proceedings, it also automatically creates an enforceable Texas judgment. *Walnut Equip. Leasing Co., Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996); *Bahr v. Kohr*, 928 S.W.2d 98, 100 (Tex. App.—San Antonio 1996, writ denied).

At that point, the domesticated judgment is effectively a no-answer default judgment because the judgment debtor has not had an opportunity to defend himself before the judgment became final. *Urso v. Lyon Fin. Servs.*, 93 S.W.3d 276, 279 (Tex. App.—Houston [14th Dist.] 2002, no pet.). If the judgment creditor has made a prima facie case for enforceability, the debtor can avoid enforcement by timely asserting and establishing one or more of the following well-established

---

[2] The other method is to bring a common-law action to enforce the judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.008 (West 2008).

7

exceptions to the requirement that a foreign judgment be afforded full faith and credit: (1) the decree is interlocutory; (2) the decree is subject to modification under the law of the rendering state; (3) the rendering court lacked jurisdiction; (4) the judgment was procured by extrinsic fraud; or (5) the period for enforcing the foreign judgment has expired. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477, 484 (Tex. App.—Houston [1st Dist.] 2004, pet. denied]; *see also Medical Admins. v. Koger Props.*, 668 S.W.2d 719, 723 (Tex. App.—Houston [1st Dist.] 1983, no writ) ("[W]here a foreign judgment appears to be a valid, final and subsisting judgment entered by a court of general jurisdiction . . . its introduction makes a prima facie case for the party seeking to enforce it, and the burden of showing its invalidity is upon the party attacking it."). In this case, Carter attacks the finality of the domesticated judgments based on the interlocutory nature of the foreign judgments and based on the Clines' failure to strictly comply with the UEFJA requirement that the attorney affidavit be filed at the same time as the authenticated judgment. The Clines contend that Carter has waived any deficiencies in the domestication proceedings—either procedural or substantive—by failing to timely assert them by ordinary methods of appeal. We will address these arguments in turn.

***Finality of the Foreign Judgments***

A direct attack on the enforceability of a foreign judgment must be made within standard appellate timetables by filing a motion for new trial within 30 days, a direct appeal within 30 days, or a restricted appeal within six months. *Urso*, 93 S.W.3d at 279 & n.4. After these deadlines have expired, a bill of review is the exclusive method of challenging nonjurisdictional defects. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (errors other than jurisdictional deficiencies must be corrected on direct attack, and when time for direct attack has elapsed, bill of

8

review is exclusive remedy); *Urso*, 93 S.W.3d at 280 & n.5 ("'[A] proceeding in the nature of a bill of review is the exclusive method of vacating a default judgment rendered in a case in which the court had jurisdictional power to render it.'" (quoting *McEwen v. Harrison*, 345 S.W.2d 706, 710 (Tex. 1961))); *see also* Tex. R. Civ. P. 329b(f) (governing the filing of a bill of review); *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009) (errors other than jurisdictional deficiencies may be corrected only through direct appeal). A direct attack by appeal, motion for new trial, or equitable bill of review may be brought in the court rendering the judgment at issue or in another court that is authorized to review the judgment. *Sweetwater Austin Props., L.L.C. v. SOS Alliance, Inc.*, 299 S.W.3d 879, 855 (Tex. App.—Austin 2009, pet. denied).

A default judgment is also subject to collateral attack if it is void on the face of the record because the court that rendered it lacked (1) jurisdiction over the parties or property; (2) jurisdiction over the subject matter; (3) jurisdiction to render a particular judgment; or (4) the capacity to act as a court. *Browning*, 698 S.W.2d at 363; *In the Interest of K.M.P.*, 323 S.W.3d 601, 603 (Tex. App.—Austin 2010, pet. denied); *Wagner v. D'Lorm*, 315 S.W.3d 188, 192-93 (Tex. App.—Austin 2010, no pet.). Unlike a direct attack, a collateral attack "is an attempt to avoid the binding force of a judgment in a proceeding not instituted for that purpose, but in order to obtain some specific relief against which the judgment currently stands as a bar." *Sweetwater Austin Props.*, 299 S.W.3d at 885. Carter's claims in this case are not a direct attack on the validity of the domestication judgments but rather are in the nature of a collateral attack.

One court has raised a question about whether a domesticated foreign judgment can be collaterally attacked on the ground that the Texas court lacked jurisdiction to domesticate the

9

judgment. *See Bancorpsouth Bank v. Prevot*, 256 S.W.3d 719, 725 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Prevot cites no Texas case in which a judgment debtor initiated a successful collateral attack on a filed foreign judgment by asserting the *Texas court* lacked jurisdiction over the judgment [as opposed to attacking the sister-state court's jurisdiction to render the judgment]. Nevertheless, we will assume, without deciding, that the rules applicable to a collateral attack on any Texas judgment apply to a collateral attack on a Texas judgment created by the filing of a foreign judgment."). We note that the UEFJA provides that a domesticated foreign judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." Tex. Civ. Prac. & Rem. Code § 35.003(c). In this case, Carter does not expressly assert that the domesticated judgments were rendered without jurisdiction; instead, he argues that there is no final judgment upon which a writ of garnishment can issue because the interlocutory Arkansas judgments merely became interlocutory Texas judgments. Regardless of which analytical construct is employed, however, facial finality of the foreign judgments is the touchstone governing the disposition of the issue in this case.

To support his argument that the foreign judgments never became final, enforceable Texas judgments, Carter cites a line of cases holding that the appellate deadlines for challenging domesticated judgments do not begin to run until the judgment debtor has filed a facially final foreign judgment. *See Love v. Moreland*, 280 S.W.3d 334, 337-38 (Tex. App.—Amarillo 2008, no pet.) (abstract of judgment was not actual judgment that could be domesticated); *Dear v. Russo*, 973 S.W.2d 445, 448 (Tex. App.—Dallas 1998, no pet.) (judgment not disposing of all parties was not final judgment and did not become final through domestication proceeding); *Myers v. Ribble*,

10

796 S.W.2d 222, 224-25 (Tex. App.—Dallas 1990, no writ) (Florida judgment did not "appear" to be final judgment because Florida court expressly reserved jurisdiction over attorney's fees and costs). In *Dear v. Russo*, the Dallas Court of Appeals considered whether an Ohio judgment was facially final because the judgment reflected that there was more than one plaintiff but recited that the judgment was rendered in favor of only one plaintiff; therefore, the judgment did not appear to dispose of all the parties to the suit. 973 S.W.2d at 447. Even though such an order could be final under the law of the state rendering the judgment, the court concluded that because the judgment did not specify that "there is no just reason for delay" it was not final under Ohio law. *Id.* The court held that the consequence in the Texas domestication proceeding was that filing of the judgment under the UEFJA did not create a prima facie showing that it was valid and enforceable in Texas. *Id.* More importantly with respect to the issues in the present case, the Dallas court determined that no final judgment was created and, therefore, "the timetables and deadlines applicable to postjudgment proceedings, including motions for new trial, [were] inapplicable." *Id.* at 448.

The courts in *Love v. Moreland* and *Meyers v. Ribble* held similarly. In *Love*, the judgment creditor filed only an abstract of judgment, not a copy of the foreign judgment itself. 280 S.W.3d at 337. As a result, the court of appeals held that no final Texas judgment existed, the clock on the trial court's plenary jurisdiction to entertain challenges to domestication had not begun, and the trial court retained jurisdiction to adjudicate the validity of the foreign judgment. *Id.* at 337-38. In *Meyers*, the court of appeals held that a Florida divorce decree was not final under Florida law because the Florida court expressly retained jurisdiction over attorney's fees and court costs. 796 S.W.2d at 224. The court said, "If the effect of the domestication order was to transform

11

the Florida judgment into a Texas judgment, then it transformed the nonfinal Florida judgment into a nonfinal Texas judgment." *Id.*

According to Carter, the Jury Verdict Judgment is not final on its face because it "was not styled as a final judgment, did not state that it was a final judgment, did not purport to resolve all of the parties and all of the claims and did not have decretal language of a final judgment and was followed by three more judgments, the last two of which were styled 'Final'." (Citations omitted.). He also contends that the Attorney's Fees Order evidences that the Jury Verdict Judgment was not final because there were pending issues (regarding attorney's fees) at the time the Jury Verdict Judgment was rendered. For some of the same reasons, Carter contends that the Attorney's Fees Order is not facially final. Moreover, Carter points out that the Attorney's Fees Order does not mention the Jones defendants at all, and thus, evidently disposes of fewer than all of the parties included in the style of the case.

"The finality of a foreign judgment is determined under the laws of the state in which it was rendered." *Bahr*, 928 S.W.2d at 100; *Mindis*, 132 S.W.3d at 484. In arguing that the foreign judgments are not final on their face, Carter relies principally on rule 54(b) of the Arkansas Rules of Civil Procedure, which mandates that an order disposing of fewer than all the parties and all the claims include specific language and findings of fact, all of which is absent in the Jury Verdict Judgment and the Attorney's Fees Order.

It seems relatively clear that the foreign judgments at issue in this case were not, in fact, final when they were domesticated because the Arkansas court granted the Jones defendants' motion for new trial, leaving pending issues that had not been resolved by the judgments. That

12

conclusion is confirmed by the Final Judgment entered on April 28, 2010, which stated that the Jury Verdict Judgment and the Attorney's Fees Order were not final. This evidence, however, was not in the record before the courts in the domestication proceedings and, in the procedural posture in which this case is presented, cannot be considered in determining if the foreign judgments are facially interlocutory. Without considering that evidence, the face of the record in the domestication proceeding does not show that the Jury Verdict Judgment is interlocutory.

There is nothing in the language of the Jury Verdict Judgment to suggest that it is interlocutory. All the parties identified in the style of the case are mentioned in the judgment along with the resolution of the claims—either by directed verdict or by jury verdict—among the parties. There is no indication that any other matters or issues remained pending before the court following rendition of judgment, and there is no statement that the court retained jurisdiction to dispose of any other issues. Although the judgment does not expressly state that it is "final" or provide any special words of finality or directive for execution, that is not required under Arkansas law. *See Thomas v. McElroy*, 420 S.W.2d 530, 532 (Ark. 1967) ("[S]trict formality in language used to express the adjudication of the court is not necessary and a 'judgment' will be tested by its substance, not its form."). In addition, even though there is no mention of attorney's fees, interest, or costs, the absence of those matters from the judgment does not make it facially interlocutory for at least two reasons. First, there is nothing in the Jury Verdict Judgment or the domestication record for that judgment that indicated any such claims were pending or that further proceedings were anticipated. Second, and more important, the Arkansas Supreme Court has held that such claims are collateral matters that do not affect the finality of a final judgment on the merits. *Midwest Terminals of Toledo, Inc. v. Palm*,

13

No.10-791, 2011 Ark. 81, 2011 WL 661695 at *7 (Ark. 2011) (holding that award of attorney's fees, prejudgment interest, and costs is collateral matter that does not bear upon finality of previously rendered final judgment on merits). Nor does the lack of a rule 54(b) certification and findings of fact render the Jury Verdict Judgment facially interlocutory because the judgment, on its face, purports to dispose of all the parties and all the claims; thus, rule 54(b) is not obviously implicated. Because the Jury Verdict Judgment appeared to be facially final under Arkansas law and was not timely challenged, we hold that it is presently enforceable and collectible in Texas. The trial court therefore did not abuse its discretion in rendering the judgment of garnishment based on the domesticated Jury Verdict Judgment.

### *Failure to Strictly Comply with the UEFJA*

Carter also alleges that defects in the manner in which the Clines prosecuted the domestication proceedings preclude enforcement of the judgment. In particular, Carter contends that the UEFJA requires that the attorney affidavit giving the names and addresses of the judgment debtor and judgment creditors be filed *at the same time* as the authenticated judgment. *See* Tex. Civ. Prac. & Rem. Code § 35.003 & .004(a) ("At the time a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court an affidavit showing the name and last known post office address of the judgment debtor and the judgment creditor."). In this case, the Clines filed the attorney affidavit *before* filing the certificate of authentication and did not refile the affidavit when the certificate of authentication was filed. While the UEFJA arguably requires that the attorney affidavit and authenticated judgment be filed at the same time, this technical violation of the Act cannot be said to deprive the court of jurisdiction to enter the domestication order and thus

14

was not timely or appropriately raised in the garnishment proceeding. *See Tanner v. McCarthy*, 274 S.W.3d 311, 316 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Although the filing of the affidavit at the time that the authenticated foreign judgment is filed is a specific requirement of the UEFJA, it does not follow that the failure to comply with this statutory provision presents a jurisdictional, rather than a procedural bar to the domestication of a foreign judgment under that act. Even when compliance with a statutory requirement is a mandatory condition for pursuing an action under a particular statutory scheme, this does not mean that compliance with the requirement is jurisdictional."); *Tri-Steel Structures, Inc. v. Hackman*, 883 S.W.2d 391, 395 (Tex. App.—Fort Worth 1994, writ denied) (failure to effectuate notice to debtor corporation was "technical" violation of UEFJA that did not prejudice debtor, and debtor had opportunity to assert defenses by motion for new trial or bill of review). If Carter had any defenses to raise, he could have done so within applicable appellate deadlines and can still do so via bill of review.

We conclude that the Jury Verdict Judgment is facially final, the domestication order is not void on the face of the record, and the challenges to enforceability of the judgment were not timely raised. Therefore, the record in the domestication proceeding does not demonstrate that the domesticated Jury Verdict Judgment is not a valid, subsisting judgment upon which a writ of garnishment can issue pursuant to Tex. Civ. Prac. & Rem. Code § 63.001(3). Accordingly, the trial court did not abuse its discretion in denying Carter's motion to dissolve. Because the garnishment

15

judgment can be sustained on the basis of the domesticated Jury Verdict Judgment alone, we need not consider Carter's challenge to the enforceability of the domesticated Attorney's Fees Order.[3]

## CONCLUSION

For the reasons stated, we affirm the trial court's orders denying Carter's motion to dissolve the writ of garnishment and motion for reconsideration, and we affirm the judgment of garnishment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Affirmed

Filed:   October 13, 2011

---

[3] Based on our disposition in this case, we also need not decide whether lack of finality of a foreign judgment could deprive a Texas court of jurisdiction to domesticate the foreign judgment. *Cf. Padron v. Lopez*, 220 P.3d 345, 355-56 (Kan. 2009) (holding that district court's subject matter jurisdiction is limited to orders entitled to full faith and credit, and court has no subject matter jurisdiction to domesticate a foreign temporary injunction); *McMinn v. McMinn*, 884 S.W.2d 277, 281 (Mo. Ct. App. 1994) (failure to file authenticated foreign judgment as required by statute deprived court of subject matter jurisdiction to issue an order of execution on the judgment).