Denise E. **SLOAN** and Patricia **Ruffin, Appellants,**

v.

Lionel **DOUGLASS** and Mickey Rivers d/b/a Wash Up, Inc., Appellees.

No. 2–85–095–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 7, 1986.

Law Office of George S. Henry and Ernest A. Laun, Dallas, for appellants.

Law Offices of Joe Shannon, Jr., P.C. and Joe Shannon, Jr., Fort Worth, for appellees.

Before JOE SPURLOCK, II, HOPKINS and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

HOPKINS, Justice.

This is an appeal of a denial of a post-judgment application for turnover under

former TEX.REV.CIV.STAT.ANN. art. 3827a.[1] Sloan and Ruffin filed suit against Douglass and Rivers, individually and d/b/a Wash Up, Inc. A default judgment was entered on June 27, 1983 against Rivers and nonsuit was taken against Douglass inasmuch as he had filed for bankruptcy. There is nothing in the record to indicate what occurred as to Wash Up, Inc., but they are not before the Court as part of this appeal. Accordingly, any mention herein of "appellee" refers only to Rivers. Subsequent to the trial in this case, appellants, Sloan and Ruffin, assigned their entire interest in the judgment to a third party, Willie Ross, and have remained in the lawsuit as nominal appellants. Appellants seek turnover under art. 3827a of appellee's deferred income in payment of their judgment.

We affirm the judgment of the trial court.

Appellee signed a contract with the Texas Rangers, Ltd. (Rangers) on April 3, 1981. The contract called for services to be rendered for the seasons 1981 through 1985. The salary was set out as: $250,000 for 1981, $275,000 for 1982, and $450,000 for 1983, 1984 and 1985. Payments were to be made in semi-monthly installments beginning January 1, 1981 and continuing thereafter until December 31, 1985.

In an addendum to the contract between appellee and the Rangers under Section 4.2 the following appears:

For the years 1983, 1984 and 1985, One Hundred Fifty Thousand Dollars ($150,000.00) of the Player's Salary in each year is to be deferred, with ten percent (10%) interest per annum accruing thereon. It is hereby agreed by the Parties hereto that the deferred portion of the Player's salary under this Contract shall be paid to Player in the following manner: Eighty Thousand Dollars ($80,000.00) a year for ten (10) years beginning in 1986. The ten (10) annual $80,000.00 payments will be made to the Player in twelve (12) equal monthly installments of $6,666.67 for each month of each such year, beginning January 1st each year and continuing throughout until December 1st each year.

According to the contract provision, in 1983, 1984 and 1985 a portion of appellee's annual salary earned in those years was to be deferred and paid in monthly installments beginning in 1986, and continuing over a ten-year period, which is after the contract between appellee and the Rangers expires.

Appellants received a final and valid money judgment against appellee and moved for the trial court to order certain "compensation and benefits" be turned over to the sheriff for execution, pursuant to former art. 3827a, which provided:

(a) A judgment creditor whose judgment debtor is the owner of property, including present or future rights to property, which cannot readily be attached or levied on by ordinary legal process and is not exempt from attachment, execution, and every type of seizure for the satisfaction of liabilities, is entitled to aid from a court of appropriate jurisdiction by injunction or otherwise in reaching the property to satisfy the judgment.

*Id.* Specifically, appellants sought all the deferred compensation from appellee's employment contract with the Rangers in an amount to satisfy their judgment, and all other "current wages" in excess of $30,000 also in an amount to satisfy their judgment. *See* TEX.PROP.CODE ANN. secs. 42.001(a), 42.002(8) (Vernon 1984).

The trial court denied this motion for turnover and entered its findings of facts as follows:

6. That the compensation for services which is received by Mickey Rivers is not paid simultaneously with the rendition of his services.

7. All sums due to be paid Mickey Rivers in 1986 are in payment for his rendi-

---

1. *See* Judgments—Collection—Court Proceedings, ch. 671, sec. 1, 1979 Tex.Gen.Laws 1555, *repealed by* Act of June 16, 1985, ch. 959, sec. 9(1), 1985 Tex.Sess.Law Serv. 7043, 7218 (Vernon), *recodified at* TEX.CIV.PRAC. & REM. CODE ANN. sec. 31.002 (Vernon 1986).

tion of personal services but are not past due.

8. No funds are presently in existence to pay Mickey Rivers in 1986.

9. The funds due to be paid Mickey Rivers in 1986 are not presently in his possession or under his control.

Conclusions of law were also entered and held as follows:

1. That the funds due to be paid to Mickey Rivers in 1986 constitute current wages for personal service.

2. That the funds due to be paid Mickey Rivers in 1986 are exempt from execution.

3. That an order requiring Mickey Rivers to turn over funds when received by him in 1986 would be tantamount to garnishment of current wages in violation of Art. 16, Sec. 28, Texas Constitution.

Appellants' first point of error complains that the trial court erred in refusing to order turnover of the interest income appellee is to receive in the future on his deferred income. In points two and three, appellants argue that the court erred in holding the funds due appellee in 1986 are current wages and to order a turnover would be tantamount to garnishment of current wages, which is unconstitutional. Points of error four, five and six contend the trial court erred in concluding the compensation to be paid in 1986 should not be turned over to the sheriff, the funds due in 1986 are not presently in appellee's possession or under his control and that the sums to be paid appellee in 1986 are payment for rendition of personal services but are not past due. Appellants' final two points of error, seven and eight, contend the trial court erred in not turning over to the sheriff appellee's present salary in excess of $30,000 as provided by TEX.PROP.CODE ANN. sec. 42.001. Appellants' first six points of error are governed by the determination of whether the compensation to be paid appellee in 1986 through 1996, for services rendered in 1983, 1984 and 1985, is current wages for the years 1983 through 1985 and therefore subject to the turnover

statute, or for the years 1986 through 1996 and exempt from turnover.

The issue before us is: when an employee contracts with his employer, in advance of wages being earned for personal services, that a portion of the employee's salary will not be paid to him during the year in which it is earned, but at a specified later date with accumulated interest at a set amount, are the deferred payments "current wages" for the year in which earned or received? This appears to be a case of first impression in Texas.

"Current" is defined as " 'running; now passing or present in its progress.' " *Dempsey v. McKennell*, 2 Tex. 284, 23 S.W. 525, 525 (1893). "Wages" means a " 'compensation given to a hired person for his services.' " *Id.* "Current wages" are "such compensation for personal services as are to be paid periodically, or from time to time, as the services are rendered." *Id.* Appellants argue that the deferred income to be paid appellee three to thirteen years after it is earned does not fall under the current wage exemption for that ten-year period, but is current when earned in 1983 through 1985. *See* TEX. CONST. art. XVI, sec. 28 and TEX.PROP.CODE ANN. secs. 42.001(a), 42.002(8). Appellants further argue that appellee voluntarily and knowingly left his income with his employer causing the income to lose its current wage exemption.

In a case relied on by appellants, *Bell v. Indian Live-Stock Co.*, 11 S.W. 344 (Tex. 1889) an employee was receiving $200 a month for his services. The employee only drew on the money when he needed it, thereby creating a credit with his employer of $624.50. The wages were voluntarily left with the employer until needed. There was no contract between the employer and employee to pay the wages in the future and the employee could draw the wages or demand payment at any time. The $624.50 was past due, and the court held the income had lost its current wage exemption. *Id.* at 346.

In our case, appellee did not have a credit with the Rangers in the same sense as the

above employee. A contract was signed and appellee was only entitled to receive the deferred income at a certain time, in certain amounts. Appellee could not draw the deferred income or demand its payments at any time he might choose. The income was to be received according to the terms of the contract.

■ Appellants attach great emphasis to the fact that appellee voluntarily left his wages with the Rangers. Voluntarily leaving wages with one's employer is only one element to be considered in deciding if wages qualify for the current wage exemption of the Constitution as other cases discuss control over the wages as being an additional element to be considered.[2] *Sutherland v. Young*, 292 S.W. 581, 583 (Tex.Civ.App.—Waco 1927, no writ) held that wages cease to be current as contemplated by the exemption laws immediately on their being paid to and received by the wage earner. Appellee herein had not received the money nor had it been paid to him.

■ The Beaumont Court of Appeals in *Gaddy v. First Nat. Bank*, 283 S.W. 277 (Tex.Civ.App.—Beaumont 1923, no writ), a review of exemption cases (*see Bell v. Indian Live-Stock Co.*, 11 S.W. 344 (Tex.1889) and *Davidson v. F.H. Logeman Chair Co.*, 41 S.W. 824, 825 (Tex.Civ.App.1897)), stated that the exemption continues only until: (1) the wages are due and in the possession of the debtor; or (2) upon the debtor's demand, could be in his possession, and are no longer. The exemption does not apply after the wages become subject to the control of the employee and he voluntarily leaves them with his employer. *Davidson*, 41 S.W. at 825.

■ Appellee did voluntarily sign a contract with the deferred income addendum. However, this contract was signed before appellee had any right to or any control over the money. After executing this contract, appellee had no control over that deferred income and no right to receive that income until a future date. The money was not in appellee's possession nor could he demand possession. The terms of the contract entitling appellee to receive the income did not provide any means of reaching the deferred income before it was due, and appellee had no such entitlement except during the ten-year period specified. An exemption continues until a time when the employee can collect the wages in the exercise of ordinary diligence. *Lee v. Emerson-Brantingham Implement Co.*, 222 S.W. 283, 284 (Tex.Civ.App.—Dallas 1920, no writ).

In all the cases discussed by appellants, the recipient of the deferred income had the option of demanding the wages. This is not an option open to the appellee as he may not make any demands for the deferred income before the due date. Both by the terms of the contract and by the uncontroverted evidence presented at trial, appellee could not receive the deferred portion of the wages until the years 1986 through 1996.

■ The purpose of current wages being exempt from garnishment is to defray the expenses of living, *Bell*, 11 S.W. at 346, and this Court has held that the exemption provision, TEX. CONST. art. XVI, sec. 28, should be liberally construed. *See J.M. Radford Grocery Co. v. McKean*, 41 S.W.2d 639, 640 (Tex.Civ.App.—Fort Worth 1931, no writ). Therefore, we conclude that appellee's deferred income is current wages for the years in which it is actually received by appellee—1986 through 1996.

Current wages are exempt from garnishment. TEX. CONST. art. XVI, sec. 28. Appellants argue that the trial court erred in holding that turnover would be tantamount to garnishment, thereby denying turnover of appellee's deferred income. Appellants further assert that the trial court had no discretion as to whether to

---

2. The Internal Revenue Service uses control/access as a key or critical factor in determining when wages are taxed as earned income. I.R.C. sec. 451(a) (1986); Treas.Reg. sec. 1.451–2(a) (1986); Rev.Rul. 60–31, 1960–1 C.B. 174, *modified by* Rev.Rul. 64–279, 1964–2 C.B. 121 and Rev.Rul. 70–435, 1970–2 C.B. 100.

order turnover of the items in question, because the items were not exempt under any statute. TEX.REV.CIV.STAT.ANN. art. 3827a states that:

(a) A judgment creditor whose judgment debtor is the owner of property, including present or future rights to property, which cannot readily be attached or levied on by ordinary legal process and is *not exempt* from attachment, execution, and every type of seizure for the satisfaction of liabilities, is entitled to aid from a court of appropriate jurisdiction by injunction or otherwise in reaching the property to satisfy the judgment.

(b) The court may order the property of the judgment debtor referred to in Subsection (a) of this section, together with all documents or records related to the property, that is *in or subject to the possession or control of the judgment debtor* to be turned over to any designated sheriff or constable for execution or otherwise applied toward the satisfaction of the judgment....

*Id.* (emphasis added).

■ Turnover is obviously an aid to judgment creditors in obtaining satisfaction on debts. However, the statute does not aid in attaching or levying on exempt property. *See* TEX.REV.CIV.STAT.ANN. art. 3827a. Texas has a strong constitutional guarantee for exemption of current wages, TEX. CONST. art. XVI, sec. 28, and under the turnover statute the creditor must prove that the property of the debtor is subject to turnover by proving the property cannot be readily attached or levied on *and* that the property is not exempt under the constitution.

■ The appellee raised the defense of exemption which appellants must overcome in order for the property to be subject to turnover. Appellants proved appellee voluntarily signed the contract agreement between himself and the Rangers. However, appellants put on no evidence regarding appellee's access to the deferred income and the contract makes no provision for accessibility to the deferred income prior to

1986 through 1996. As previously stated, the contract terms provide that the appellee cannot receive the funds until 1986 through 1996. Furthermore, appellee testified that he could not reach the deferred income until it was due as provided in the contract. Appellee testified that to his knowledge the deferred income was not guaranteed and could be taken from him under certain conditions. Appellee was asked if the deferred income was "an annuity or any type of liquid asset". Appellee replied "no" and was then asked if the $150,000 deferred from his 1983 salary existed at time of trial, to which appellee responded "no". This testimony was not rebutted and no further evidence was presented concerning appellee's access to the deferred income. We note that appellee attempted to alter the deferred salary agreement so as to receive a greater percentage of his salary in the year in which it was earned, but the Rangers never signed the revised agreement.

We hold that the trial court did not abuse its discretion in declining to order appellee to turnover the deferred income inasmuch as the income is exempt, and not subject to turnover under art. 3827a.

■ Appellants next argue that the interest earned on the deferred income due appellee is not current wages, is not exempt from execution, and should be subject to turnover under art. 3827a. Terms of delivery of the interest accumulation to appellee are not set out in the contract and there is no evidence as to when the interest will be paid to appellee. The contract only sets out that ten percent (10%) interest per annum will accrue on the deferred income. There is no indication of when the interest will be paid to the account and then to appellee. Without evidence of when and in what amount the interest becomes the property of appellee there was no basis upon which the trial court or this Court may order a severance and turnover the earned interest. Appellants' first six points of error are overruled.

In points of error seven and eight, appellants argue the trial court erred in denying turnover of appellee's present salary (consisting of the deferred payments under his contract with the Rangers) in excess of $30,000. Appellants argue that even if the deferred payments are current wages when received, TEX.PROP.CODE ANN. sec. 42.001(a) limits the exemption of appellee's salary to only $30,000.

Article XVI, sec. 28 of the Texas Constitution provides that current wages for personal service shall not be subject to garnishment except for court ordered child support. The Constitution does not put a dollar limit on the current wages exemption. Under former art. 3827a current wages are to be exempt from garnishment and once again there is no limit placed on the amount. However, sec. 42.001(a) of the Texas Property Code sets the personal property exemption limit as "[e]ligible personal property that is owned by a family and that has an aggregate fair market value of not more than $30,000." The Legislature included current wages for personal services under TEX.PROP.CODE ANN. sec. 42.002 which lists personal property that is exempt. Appellants, without citing any authorities supporting their contention, maintain that the aggregate amount of $30,000 as set by sec. 42.001(a) applies to the "current wages for personal services" exemption of sec. 42.002(8). We disagree. It is well known that once the Constitution gives a right in a constitutional provision, the Legislature is without power to destroy or impair these fixed rights. *City of Fort Worth v. Howerton*, 149 Tex. 614, 236 S.W.2d 615, 618 (Tex.1951). We hold that the $30,000 limit of TEX.PROP.CODE ANN. sec. 42.001(a) is invalid when applied to an exemption under art. XVI. *See Maxon v. Franz*, 525 S.W.2d 714, 717 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) ("[E]ven if a statute is invalid when applied to certain persons, circumstances or subject matter, it may be valid as to other persons, circumstances or subject matter."). Points of error seven and eight are overruled.

The judgment of the trial court is affirmed.