Affirmed in Part, Reversed and Rendered in Part, and Majority and
Concurring Opinions filed June 12, 2007








 

Affirmed in Part, Reversed and Rendered in Part, and Majority
and Concurring Opinions filed June 12, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01095-CV

____________

 

GENERAL ELECTRIC CAPITAL
CORPORATION and MORRIS TABAK, Appellants

 

V.

 

ICO, INC., TIMOTHY J. GOLLIN, and
WEYCER KAPLAN PULASKI & ZUBER, P.C., Appellees

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 2005-36250A

 



 

M A J O R I T Y  O P I N I O N








Appellants, General Electric (GE) and Morris Tabak,  appeal
the trial court=s granting of a motion to dissolve a writ
of garnishment in favor of appellees, ICO, Inc. (ICO), Timothy Gollin, and
Weycer Kaplan Pulaski & Zuber, P.C.  GE and Tabak bring three issues on
appeal: 1) whether the trial court erred in granting the motion to dissolve on
the basis that the garnished funds were exempt as current wages for personal
service; 2) whether it was error to grant attorney=s fees in favor of
Gollin against GE and Tabak; 3) and whether the court reversibly erred in not
filing findings of fact and conclusions of law as requested.  We affirm the
dissolution of the writ, but reverse the trial court=s award of
attorney=s fees to Gollin.

Factual and Procedural Background

In June of 2001, Gollin began working for ICO as Chief
Executive Officer.  Gollin=s employment agreement stated that he
would receive a severance package should his contract not be renewed.  The
contract stated that Gollin would be entitled to a severance package equal to
one time his base salary immediately prior to his non-renewal.  The contract
did not, however, specify any details of the payment, such as its timing or
whether it would be payed in a lump sum or over time.  After the end of his
contract term, Gollin was unable to reach an agreement with ICO concerning
renewal.  Gollin and ICO agreed that his nonrenewal entitled Gollin to
severance pay.  ICO proposed to pay the severance over a full year, but Gollin
requested a lump sum payment.  The two entered into a compromise agreement,
stating that ICO would pay the severance over a six month period.  

In the meantime, GE obtained a judgment against Gollin in
the United States District Court for the Southern District of Texas in November
of 2001 for $389,102. GE pursued a garnishment in state court against ICO, who
owed Gollin the severance payment, which was equivalent of one year=s salary, or
$247,000.  The trial court issued a writ of garnishment, and thereafter Gollin
filed a motion to dissolve the writ pursuant to Rule 664a of the Texas Rules of
Civil Procedure.  He argued that the garnished severance payments were current
wages and, as such, were exempt under the Texas Constitution, the Texas Civil
Practice and Remedies Code, and the Texas Property Code.  ICO then answered the
writ, admitting its indebtedness, but pleading as a defense that the amount
constituted Gollin=s current wages.








The trial court entered an order dissolving the writ,
stating in its order that it found the motion to dissolve meritorious.  The
court further ordered that GE and Tabak would pay $3,500 in attorney=s fees to Gollin=s counsel, Weycer,
Kaplan, Pulaski, & Zuber, P.C.  Following this order, GE requested findings
of fact and conclusions of law.  The trial court never responded to this
request.[1]


Analysis

I.        The Writ Was Not
Improperly Dissolved

A.      Standard
of Review

Precedent from this court dictates that we apply an abuse
of discretion standard to resolve whether the dissolution of a writ of
garnishment was improvidently granted.  See Am. Express Travel Related
Servs. v. Harris, 831 S.W.2d 531, 533 (Tex. App.CHouston [14th
Dist.] 1992, no writ); see also Kyanize Paints, Inc. v. Denton, No.
C14-91-00705-CV, 1992 WL 105764, at *5 (Tex. App.CHouston [14th
Dist.] May 21, 1992, no writ) (not designated for publication).  A trial court
abuses its discretion if it acts without reference to guiding rules or
principles, or in an arbitrary or unreasonable manner.  See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985).

B.      No Abuse
of Discretion in Holding Severance Was Current Wages for Personal Services

Under Rule of Civil Procedure 664a, a defendant whose
property or account has been garnished may seek to vacate, dissolve, or modify
the writ of garnishment for any grounds or cause, extrinsic or intrinsic.  One
such ground, under Texas law, is the exemption from garnishment for Acurrent wages for
personal service.@  Tex.
Const. art. XVI, ' 28; Tex.
Civ. Prac. & Rem. Code ' 63.004; see
also Tex. Prop. Code ' 42.001.








AThe garnishment exception for current
wages applies without regard to whether compensation is denominated as >wages= or >salary,= the controlling
issue being whether it is compensation for personal service.@  Davidson
Texas, Inc. v. Garcia, 664 S.W.2d 791, 793 (Tex. App.CAustin 1984, no
writ).  This exception should be liberally construed in favor of the wage
earner.  Id. (citing J.M. Radford Grocery Co. v. McKean, 41
S.W.2d 639, 640 (Tex. Civ. App. 1931, no writ); see also Hickman v. Hickman,
149 Tex. 439, 234 S.W.2d 410, 413 (1950) (stating A[O]ur exemption
laws should be liberally construed in favor of express exemptions, and should
never be restricted in their meaning and effect so as to minimize their
operation upon the beneficent objects of the statutes. Without doubt the
exemption would generally be resolved in favor of the claimant@).    

The record tells us only that the initial employment
agreement between Gollin and ICO required ICO to pay Gollin a severance package
if the parties were unable to reach an agreement regarding contract renewal. 
It was the job of the court below, and it is our job now, to construe whether
such an agreement is for Apersonal services.@  GE and Tabak
point to language in a supplemental agreement between Gollin and ICO, which
states that the severance will be owed upon termination of the employment
relationship.  But this language only states when the severance must be paid,
not why the severance was owed.  GE and Tabak also cites language from the
original employment agreement as proof that the severance package was payment
for continuing obligations, such as nondisclosure and agreement not to sue
ICO.  However, this cited contract provision deals with the severance package
that would have been owed had Gollin=s employment been
terminated other than by non-renewal.  The severance package in this case was
owed pursuant to different contractual provisionsCprovisions which
did not describe why the severance was owed.  Therefore, we look to case law
for guidance in construing whether severance payments are for personal services.








In Radford, a grocery store was garnished for an
amount owing to its employee, Tinsley.  41 S.W.2d at 639.  Tinsley=s contract
provided that he would earn a set amount of money per month, and if Tinsley met
the condition of remaining with the grocery store for more than one year, he
would be paid an additional bonus, based on a percentage of his sales.  Id.  The
trial court allowed the garnishment based on the idea that any amount over and
above his hourly wage did not constitute Acurrent wages for
personal services.@  Id.  The appellate court
reversed, relying on the liberal construction to be given exemption statutes. 
It held that the payment was current wages for personal services within the
meaning of the Constitutional and statutory exemptions because the payment was
additional consideration for Tinsley=s services.  Id.
at 640.

King v. Floyd extended the Radford line of
reasoning.  In King, a football player=s contract
contained a provision that he would be paid while he was injured, so long as
the team physician opined that the player was unable to perform due to his
injuries.  538 S.W.2d 166, 169 (Tex. Civ. App.CHouston [1st
Dist.] 1976, writ ref=d n.r.e.).  The court held that the
payments made to the player after his injury rendered him unable to compete might
be considered additional compensation for the services previously rendered,
and construed the continuation of salary to be in the nature of a bonus for
satisfactory service.  Id.

The liberal construction in favor of express exemptions, as
illustrated in Radford and King controls our disposition of this
issue.  When no contradictory contract language exists, we hold that a
severance payment should be liberally construed as a bonus for satisfactory
service, since such payments might be considered additional compensation for
services previously rendered.  Here, although the payment of the severance is
an amount over and above Gollin=s normal salary, the contract does not
state that the money is for something other than services already rendered.  

Therefore, because of the general rule that we apply the
exemption laws liberally, and because this contract does not clearly state that
the severance payment was for something other than personal services, and
because courts have found severance agreements to qualify as current wages for
personal service, the trial court acted within its discretion when it found that
the severance payment was in the nature of current wages for personal service.[2]









C.      No Abuse
of Discretion in Holding That Severance Did Not Lose Exempt Status

GE and Tabak argue that even if the severance constituted
current wages when it was owed, it lost its exempt status when Gollin agreed to
Aleave@ part of the
severance with ICO to be paid over time.  While it is true that an exemption
may be lost under certain circumstances, those circumstances are not present
here. 

1.       Current
Wages Exemption May Be Lost

The protection of the constitutional exemption may be lost
when the wages are under the control of the employee and the employee
voluntarily leaves them with his employer or collects and deposits them with
someone else.  Davidson v. F.H. Logeman Chair Co., 41 S.W. 824, 825
(Tex. Civ. App. 1897, no writ); see also Sloan v. Douglass, 713 S.W.2d
436, 440 (Tex. App.CFort Worth 1986, writ ref=d n.r.e.) (stating
that voluntariness and control are both elements to be considered in deciding
if wages are exempt).  

The seminal case on the subject of losing current wages
status is Bell v. Indian Live-Stock Co., 11 S.W. 344 (Tex. 1889).  In Bell,
the employee was paid a wage of $200 per month, but left his money with his
employer and drew funds only as he needed them.  Id. at 344B45. The court held
that the sum of $624.50, which had accrued in the employee=s account with his
employer, had lost its exempt status because the wages were no longer current. 
Id. at 346.

Davidson v. F.H. Logeman Chair Co. presented a
similar issue.  There, an employee was being paid $75 per month, but had not
been collecting his pay as it became due.  The court held that the wages which
were past due and in the hands of the employer were subject to garnishment, but
the amount due for the month of September, which the employee was unable to
collect and was not voluntarily left with the employer, was still exempt as
current wages.  Davidson,  41 S.W. at 825.   








A third case, Sloan v. Douglass, reiterates that
control and voluntariness are the two elements to be considered in whether the
current wages exemption has been destroyed.  In deciding whether a baseball
player=s deferred
compensation lost its exemption, the court said, AAppellants attach
great emphasis to the fact that appellee voluntarily left his wages with the
Rangers.  Voluntarily leaving wages with one=s employer is only
one element ... as other cases discuss control over the wages as being an
additional element to be considered.@  Sloan,
713 S.W.2d at 440. 

2.       GE and
Tabak Rely On Sloan

GE and Tabak rely exclusively on language in Sloan to
support their contention that Gollin=s severance lost
its exempt status when Gollin agreed to have it paid over a six month period. 
In Sloan, a baseball player signed a contract with the Texas Rangers
baseball club for services to be rendered over a five year period.  See id. at
438.  His salary in the third, fourth and fifth year was substantially
increased, but he agreed to receive most of the increased amount over a ten
year period, beginning after the five year contract term was over.  See id. 
The court acknowledged that the appellee voluntarily signed the contract.  Id.
at 440.  However, in the part of the opinion GE and Tabak now rely on, the
court stated that the Acontract was signed before appellee
had any right to or any control over the money.@  Id. (emphasis
added).  The court held that although his salary deferral may have been
voluntary, appellee never had any control over the money, and his wages did not
lose their exempt status.  See id. at 440B41. 

3.       Unlike Sloan,
Gollin=s Agreement to Defer Was Not AVoluntary@

Although we do not adopt the Sloan standard as
controlling in this instance, to the extent it is applicable, it is
distinguishable.  In Sloan, voluntariness was a given.  The contract
deferring payment in that case was signed freely and before any services were
rendered or money paid.  In this case, however, voluntariness is not a given. 
When wages are left with an employer due to an inability to collect them, they
are not left voluntarily.  Davidson, 41 S.W. at 825.  Another court has
held:








the purpose of the constitutional
provision, is to exempt the wage until it is due and is in possession of the
wage-earner, provided that, if he is unable to collect same when due, the
exemption then continues to such time when he can collect same in the exercise
of ordinary diligence.

Lee
v. Emerson-Brantingham Implement Co., 222 S.W. 283, 284 (Tex. Civ. App.CDallas 1920, no
writ).  Here, at the end of his employment, Gollin demanded payment immediately
in a lump sum, but ICO would not acquiesce.  After negotiations, Gollin and ICO
agreed that payments would be made over a six month period.  Clearly, the
inability to collect the entire sum was not of Gollin=s own choosing. 
It was involuntary.  

GE and Tabak would have us hold that Gollin did not
exercise ordinary diligence to collect his severance payment and therefore the
wages lost their exempt status because he agreed to a payout of the wages when
his employer refused to pay in a lump sum.  GE and Tabak appear to maintain
that Gollin must have sued immediately when ICO did not pay the full amount. 
This claim would require us to conclude that when an employer and employee have
a legitimate dispute over the payout of wages, an employee=s choice to
negotiate to obtain the money due and owing does not qualify as the exercise of
ordinary diligence; something more is required.  But, if negotiations do not
constitute ordinary diligence, the alternative is a lawsuit.  This is an
extreme position we are unwilling to adopt.








GE and Tabak have not cited any opinion in which a court
held that (1) one who chose to negotiate before suing failed to use ordinary
diligence, or (2) the wages the employer held should lose their exempt status. 
Suit should not be the only alternative available to an employee to preserve
the exempt status of wages.  GE and Tabak=s position ignores
the many authoritiesCincluding courtsCthat recognize the
value of negotiations and other forms of alternative dispute resolutions.  See,
e.g., Tex. Civ. Prac. & Rem.
Code ' 154.002 (AIt is the policy
of this state to encourage the peaceable resolution of disputes ....@); id. ' 154.003 (placing
burden of implementing policy on the courts);  L.H. Lacy Co. v. City of
Lubbock, 559  S.W.2d 348, 352 (Tex. 1977) (holding that a policy of encouraging
arbitration agreements is preferable in order to alleviate court congestion); Hansen
v. Sullivan, 886 S.W.2d 467, 469 (Tex. App.CHouston [1st
Dist.] 1994, orig. proceeding) (citing section 154.002 of the Civil Practice
and Remedies Code for Texas=s general policy favoring peaceable
dispute resolution).  

Thus, for purposes of maintaining the exempt status of
wages, we refuse to hold that an employee who negotiates with his employer to
secure payment of wages held by the employer has not exercised ordinary
diligence.  And we hold that an employee does not voluntarily leave money with
an employer when the employee negotiates, rather than sues, to force the
employer to pay the wages owed.

4.       Right to
Payment Is Not Sufficient To Meet Control Prong

Still assuming that the Sloan standard is
applicable, we now turn to the second elementCcontrol. 
Appellant asks us to construe language in Sloan to mean that a
contractual right to payment[3]
is sufficient control to destroy the exemption.  








Again, GE and Tabak=s position is
unsupported by the case law.  No precedent holds that a simple right to payment
constitutes a right of control sufficient to destroy the current wages
exemption.  In the leading cases in this area, the exemption has been held
destroyed only when the employee has treated his employer as a bankCaccruing funds and
drawing them out only as needed.  See, e.g., Davidson, 41 S.W. at 825; Bell,
11 S.W. at 346.  Clearly that was not the case here, when Gollin agreed to be
paid over time, at intervals, not as a matter of convenience for himself, but
because it was the only way ICO would agree to pay him.  Besides the situation
presented in Bell and Davidson, courts have said the exemption is
destroyed only when there has been Areceipt@ or Apossession@ of wages.  See,
e.g., Brink v. Ayre, 855 S.W.2d 44, 45 (Tex. App.CHouston [14th
Dist.] 1993, no writ); Caulley v. Caulley, 777 S.W.2d 147, 151 (Tex.
App.CHouston [14th
Dist.] 1989), aff=d in part, rev=d in part, 806 S.W.2d 795
(Tex. 1991); Cain v. Cain, 746 S.W.2d 861, 862B63 (Tex. App.CEl Paso 1988, writ
denied); Salem v. Am. Bank of Commerce, 717 S.W.2d 948, 948B49 (Tex. App.CEl Paso 1986, no
writ); Smith v. Bradshaw, 105 S.W.2d 340, 341 (Tex. App.CDallas 1937) aff=d, 130 Tex. 180,
108 S.W.2d 200 (1937); Sutherland v. Young, 292 S.W. 581, 583 (Tex. Civ.
App.CWaco 1927, no
writ).  Control is not established merely because ICO was bound by the contract
to pay Gollin the severance funds.  As we noted earlier, ICO and Gollin had a
legitimate dispute as to how the funds were to be paidCin one lump sum or
over time.  Gollin resorted to negotiations to resolve the dispute.  The fact
that he received the money over time rather than in one lump paymentChis desired form
of paymentCshows that he did not exercise control over the funds.


As we have already noted, the funds were not left
voluntarily, and since Gollin did not exercise control over the funds, the
severance did not lose its exemption, and the trial court did not abuse its
discretion by dissolving the writ.  We overrule GE and Tabak=s first issue. 

II.       Attorney=s Fees Reversed

The availability
of attorney=s fees under a particular statute is a question of law
for the court.  Holland v. Wal‑Mart Stores, Inc., 1 S.W.3d 91, 94
(Tex. 1999). We review questions of law de novo.  Tex. Dep=t of Transp. v.
Needham, 82 S.W.3d 314, 318 (Tex. 2002).  AAn award of attorney=s fees may not be
supplied by implication but must be provided for by the express terms of the
statute in question.@  First City Bank-Farmer=s Branch, Texas v.
Guex,
677 S.W.2d 25, 30 (Tex. 1984).  Rule 677 of the Texas Rules of Civil Procedure
governs cost allocation in a garnishment proceeding.  It states:

Where the
garnishee is discharged upon his answer, the costs of the proceeding, including
a reasonable compensation to the garnishee, shall be taxed against the
plaintiff; where the answer of the garnishee has not been controverted and the
garnishee is held thereon, such costs shall be taxed against the defendant and
included in the execution provided for in this section; where the answer is
contested, the costs shall abide the issue of such contest.








Tex.
R. Civ. P. 677.  The term Acosts@ in this rule has
repeatedly been interpreted as including attorney=s fees.  E.g.,
Rowley v. Lake Area Nat=l Bank, 976 S.W.2d 715,
721 (Tex. App.CHouston [1st Dist.] 1998, pet. denied); Moody Nat=l Bank v.
Riebschlager, 946 S.W.2d 521, 525 (Tex. App.CHouston [14th
Dist.] 1997, writ denied); Henry v. Ins. Co. of N. Am., 879 S.W.2d 366,
369 (Tex. App.CHouston [14th Dist.] 1994, no writ).  

Gollin cites to Rowley for the proposition that when
a garnishee=s answer is contested, costs should be awarded to
whomever prevails in the contest, whether garnishee or garnishor.  See
Rowley, 976 S.W.2d at 722.  To the extent Rule 677 applies here,[4] 
this court is bound by Henry v. Insurance Co. of North America.  See
879 S.W.2d at 369.  In Henry, this court held that Rule 677 only gave a
garnishee the right to recover attorney=s fees, and
nothing in the rule allows a garnishor to recover attorney=s fees from a
debtor.  Id. 

This case is exactly like Henry, except here it is
the debtor who is seeking attorney=s fees under Rule
677.  The rule does not provide for a debtor to recover attorney=s fees, any more
than it provides for a garnishor=s recovery of fees. 
Therefore, since we may not supply authority to award attorney=s fees by
implication, we hold that the trial court had no authority under Rule 677 to
award attorney=s fees to Gollin.  See id.    

Gollin argues in the alternative that the award of attorney=s fees to him was
proper under Rule 664a, since that rule provides that a court Amay make all such
orders ... as justice may require.@  However, as
stated above, it has long been the rule in Texas that unless provided for by
contract, an award of attorney=s fees must be provided for by the express
terms of the statute in question.  Guex, 677 S.W.2d at 30.  A rule
stating that a court may Amake orders@ as Ajustice requires@ falls well short
of the specificity required to support an award of attorney=s fees.  See,
e.g., Holland, 1 S.W.3d at 95B96 (stating that a
statute providing for recovery of Areasonable damages@ was not specific
enough to include the accrual of attorney=s fees).  We
therefore sustain appellants= second issue, and reverse the portion of
the trial court=s judgment awarding attorney=s fees to Gollin.








III.      No
Findings of Fact or Conclusions of Law Were Necessary

GE and Tabak=s third issue
contends that the trial court harmfully erred in not filing findings of fact
and conclusions of law.  Rule 296 provides that A[i]n any case
tried in the district or county court without a jury, any party may request the
court to state in writing its findings of fact and conclusions of law.@  Tex. R. Civ. P. 296.  Rule 296 gives a
party a right to findings of fact and conclusions of law after a conventional
trial on the merits before the court.  IKB Indus. (Nigeria) Ltd. v. Pro-Line
Corp., 938 S.W.2d 440, 442 (Tex. 1997).  In all other cases, findings of
fact and conclusions of law are proper, but a party is not entitled to them.  Id.
  A case is Atried@ when a court
holds an evidentiary hearing.  Puri v. Mansukhani, 973 S.W.2d 701, 708
(Tex. App.CHouston [14th Dist.] 1998, no pet.) (citing Besing
v. Moffitt, 882 S.W.2d 79, 81B82 (Tex. App.CAmarillo 1994, no
writ).  In this case, there was no evidentiary hearing, and therefore no Atrial on the
merits.@  As such, there
could have been no findings of fact, and any conclusions of law would have been
only advisory, and were, therefore, unnecessary.  See IKB Indus., 938
S.W.2d at 442. 

Even if findings of fact and conclusions of law were
necessary, it would not change our holding because the error, if any, has not
prevented the appellants from properly presenting their case to us.  See
Elliott v. Kraft Foods N. Am., Inc., 118 S.W.3d 50, 54B55 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  The controlling issue is whether the circumstances of
the particular case would require an appellant to guess at the reasons for the
trial court=s decision.  Id. at 54.  Here, GE and Tabak
knew that the court based its decision on the current wages exemption because
that was the only argument set forth in Gollin=s motion to
dissolve the writ.  The trial court=s order
specifically stated that it dissolved the writ of garnishment because it found
the motion had merit.  Thus, the reason set out in the motion was the reason
for the trial court=s judgment.  We overrule appellant=s third issue. 








Conclusion

Having overruled GE and Tabak=s issues one and
three and sustained their second issue, we affirm the order of the trial court,
except for the award of attorney=s fees to Gollin,
which portion of the order is reversed. 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Majority and Concurring Opinions filed June 7, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.  (Frost, J., concurring).









[1]  We note that Morris Tabak passed away during the
pendency of this appeal.  We proceed with determining the merits of the appeal
and render judgment as if he were alive.  See Tex. R. App. P. 7.1(a). 





[2]  GE also argues that the definition of Aseverance@ in
the Texas Administrative Code controls in deciding whether severance fits
within the definition of current wages.  We hold that the definition, which
relates to the Texas Payday Rules, does not apply here.  See Brookshire v.
Houston Indep. Sch. Dist., 508 S.W.2d 675, 677B78 (Tex. Civ. App.CHouston
[14th Dist.] 1974, no writ) (holding that a word defined in one act does not
necessarily determine the word=s meaning in
another act dealing with a different subject).  





[3]  When we say Aright
to payment@ we do not imply that the payment was due
immediately.  We mean simply that under the contract language, because of the
non-renewal of his contract, Gollin was entitled to receive a severance
package.





[4]  Rule 677 may not apply in this case at all.  By its plain language, it
applies where a garnishee is discharged on his answer, held on his answer, or
his answer is contested.  See Tex.
R. Civ. P. 677.  Here, the court dissolved the writ based on a motion by
the debtor, not based on the resolution of a contest as to the garnishee=s answer.