Affirmed in Part, Reversed and Rendered in Part, and
Majority and Concurring Opinions filed June 12, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01095-CV

____________

 

GENERAL ELECTRIC CAPITAL
CORPORATION and MORRIS TABAK, Appellants

 

V.

 

ICO, INC., TIMOTHY J. GOLLIN, and
WEYCER KAPLAN PULASKI & ZUBER, P.C., Appellees

 



 

On Appeal from the 165th District
Court

Harris County, Texas

Trial Court Cause No. 2005-36250A

 



 

C O N C U R R I N G   O P I N I O N

The court reaches the correct result in concluding that the
trial court did not err in dissolving the writ of garnishment, but the majority=s reasoning goes beyond what is necessary
to resolve the narrow issue before this court. 








                          Factual and Procedural Background

Effective June 21, 2001, appellee Timothy Gollin and
appellee ICO, Inc. entered into an employment agreement under which ICO
employed Gollin as its Chief Executive Officer (hereinafter AOriginal Agreement@).  The Original
Agreement had an initial term of two years, after which the agreement was to
continue on a year-to-year basis unless ICO gave Gollin notice at least sixty
days before the end of the two-year period that it did not intend to renew the
Original Agreement.  If ICO gave this notice and if the Original Agreement were
not renewed, then Gollin would be entitled to receive a severance benefit in
the amount of his annual salary at the end of his employment.  The Original Agreement
does not specify when this amount would be due or exactly how it would be paid.








ICO gave Gollin the requisite notice that it did not intend
to renew the Original Agreement after expiration of the initial two-year
period.[1] 
At the time, Gollin=s annual salary was $247,500; therefore,
ICO was required to pay Gollin this amount some time after the end of the
two-year period on June 20, 2003.  However, despite ICO having given the
sixty-day notice under the Original Agreement, ICO and Gollin still thought
that they might be able to come to a new agreement under which Gollin would
continue as Chief Executive Officer.  Nonetheless, as the expiration of Gollin=s employment under
the Original Agreement approached, the parties still were negotiating and
wished to continue negotiating beyond June 20, 2003.  To this end, effective
June 19, 2003, the parties entered into an agreement (hereinafter ASupplemental
Agreement@) extending the expiration date of the Original
Agreement to July 15, 2003, to allow time for more negotiation.  On July 14,
2003, the parties amended the Supplemental Agreement to change all references
to AJuly 15, 2003@ to AAugust 15, 2003,@ potentially
extending the term of Gollin=s employment through August 15, 2003. 
Under the Supplemental Agreement as amended, notwithstanding anything to the
contrary in the Original Agreement, in the event that Gollin terminated his
employment with ICO on or before August 15, 2003, ICO agreed it would Aowe [Gollin]
severance pay equal to $247,500.@  Again, this
agreement specified the amount but not the timing of the payment.

Effective July 17, 2003, Gollin resigned his employment,
and therefore, under the amended Supplemental Agreement, ICO had to pay Gollin $247,500 at
some point in time,  but the parties had not explicitly agreed as to when this
amount would be due.  Gollin asserted that the entire amount was due on his
last day of employment, whereas ICO wanted to pay this amount in installments
over the one-year period after the end of Gollin=s employment.  Contemporaneous with
the end of Gollin=s employment on July 17, 2003, but effective July 18, 2003,
ICO and Gollin entered into an agreement as to how this severance would be paid
(hereinafter AFinal Agreement@).  Under the Final Agreement, ICO agreed to pay Gollin
$82,500 upon receipt of the signed agreement followed by six monthly
installments of $27,500, beginning on August 15, 2003.

            Although ICO
made the first payment of $82,500, before the next payment came due on August
15, 2003, Hoard Gainer Industry Co., Ltd., a creditor of Gollin, served a writ
of garnishment on ICO (AHoard Gainer Action@).  Due to the Hoard Gainer Action,
ICO made no further payments to Gollin.  The writ of garnishment in the Hoard
Gainer Action was eventually dissolved without any payment having been made by
ICO and without any determination as to whether the severance payments are
exempt from garnishment.  See Hoard Gainer Indus. Co., Ltd. v. Gollin,
No. 01-03-01320-CV, 2005 WL 1646116, at *1B2 (Tex. App.CHouston [1st Dist.] July 14, 2005,
pet. denied).  Before the Hoard Gainer Action was completely resolved,
however, appellant General Electric Capital Corporation served its writ of
garnishment on ICO in this case.  Due to the pendency of this action, ICO has
not paid the remaining $165,000 to Gollin.  

Analysis








The majority correctly determines that the severance
payments owed by ICO to Gollin are Acurrent wages for
personal service@ under the Texas Constitution and
applicable Texas statutes.[2] 
The majority then turns to an alternative argument made by General Electric
Capital Corporation and its garnishment counsel, Morris Tabak (hereinafter
collectively the AGeneral Electric Parties@).  The General
Electric Parties assert that, even if the severance payments are Acurrent wages for
personal service,@ they have lost their exempt status
because the day after they came due on July 17, 2003, Gollin agreed to defer
the payment of these amounts.  This argument fails based on the factual record
before this court. 








Gollin testified in his affidavit that he entered into the
Final Agreement on July 17, 2003, contemporaneous with the termination of his
employment, not the following day.  No evidence in the record contradicts this
testimony.[3] 
Agreeing to postpone the due date for Awages@ before they are
due does not fall under the line of cases on which the General Electric Parties
rely.  See Bell v. Indian Live-Stock Co., 11 S.W. 344, 345 (Tex. 1889)
(stating that wages that had been exempt as Acurrent wages for
personal service@ were no longer exempt Awhen the wages
became past due@).  Furthermore, even presuming for the
sake of argument that Gollin did not enter into the Final Agreement until July
18, 2003, after the end of his employment the day before, the analysis does not
change.  Because the parties did not specify a time for payment of the
$247,500, a reasonable time for performance of this obligation became an
implied part of the parties= agreement.  See, e.g., Gulf Oil Corp.
v. Reid, 337 S.W.2d 267, 275 (Tex. 1960) (stating that A[w]here no time is
fixed for performance of any phase of a contract, the law necessarily will
imply that it is to be performed within a reasonable time@).  The record
indicates that Gollin asserted that a reasonable time to pay this amount was
all at once at the end of his employment; ICO, however, apparently thought it
was reasonable to pay in twelve monthly installments.  Rather than agreeing to
postpone payments by ICO that already were past due, the parties agreed to the
future due dates for payments that previously were only due to be paid within a
reasonable time after termination of employment on July 17, 2003.  Therefore,
even if there were a one-day gap between the end of Gollin=s employment and
the parties= signing of the Final Agreement, this would not mean
that the severance payments were past due when Gollin entered into the Final
Agreement.[4] 


The General Electric Parties argue on appeal that even if
the $165,000 ICO owes Gollin was initially exempt as current wages, this
severance lost any exemption it had when Gollin agreed to the payment schedule
while the severance allegedly was past due.  As discussed above, this argument
fails because there is no evidence in the record that the severance was past
due when Gollin agreed to the payment schedule.[5] 
Therefore, the trial court did not err in rejecting this argument, regardless
of whether  Sloan v. Douglass correctly states the legal standard as to
how to determine when this exemption is lost.  See 713 S.W.2d 436, 440
(Tex. App.CFort Worth 1986, writ ref=s n.r.e.) (stating
that A[v]oluntarily
leaving wages with one=s employer is only one element to be
considered in deciding if wages qualify for the current wage exemption . . .
other cases discuss control over the wages as being an additional element to be
considered@); see also Davidson v. F.H. Logeman Chair Co.,
41 S.W. 824, 825 (Tex. Civ. App.CBeaumont 1897, no
writ) (stating legal
standard similar to that used in Sloan).  Although the judgments
rendered on appeal by the Sloan and Davidson courts were correct,
it is not clear that the legal standard used in reaching these judgments is
proper.  








This
court recites the Sloan legal standard as if it were the applicable law[6]
and analyzes the instant case Ato the extent [the Sloan legal standard] is applicable
. . . .@[7]  Sloan is not binding
precedent in this court, and it is unnecessary to analyze the Sloan
factors of voluntariness and control to dispose of this case.  The better
course would be to conclude that the severance amount that ICO owes Gollin
still constitutes exempt current wages for personal services because there is
no evidence to support the General Electric Parties= assertion that
the severance was past due when Gollin agreed to the payment schedule. 

                                                                Conclusion

The court correctly
determines that the severance payments owed by ICO to Gollin are exempt as Acurrent wages for personal service@ under the Texas Constitution and
applicable Texas statutes.  The court correctly rejects the General Electric
Parties= argument that Gollin lost this exemption.  However, the court
should reject this argument based on the undisputed evidence and unambiguous
contracts in our record rather than on the analysis of the Sloan factors
used by the majority. 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered and Majority and
Concurring Opinions filed June 12, 2007.

Panel consists of Justices Fowler,
Edelman, and Frost. (Fowler, J., majority).

 









[1]           This fact is reflected in the Supplemental
Agreement.





[2]           Although this court reviews a dissolution
of garnishment writ under an abuse-of-discretion standard, the majority seems
to overemphasize this standard, given that this case involves unambiguous
agreements and undisputed evidence.  





[3]           The Final Agreement states that it is
effective July 18, 2003, but it does not state when the parties signed it.





[4]           If this court had to address whether Gollin
voluntarily entered into the Final Agreement, the result would be contrary to
the majority=s analysis because there is no evidence in the record
to support the conclusion that Gollin entered into this agreement involuntarily. 
See ante at pp. 7B9.





[5]           The General Electric Parties have not
asserted that the severance payments are past due and no longer exempt because
ICO has withheld payment for several years past the dates in the Final
Agreement after having been served with two different writs of garnishment. 
Therefore, this court need not address this argument, which would lack merit
even if the General Electric Parties had raised it.





[6]           See ante at p 6.





[7]           See ante at p. 7.