Charlita Ayllene MARRS, Appellant

v.

Michael Dennis MARRS and
Jacqueline Taylor,
Appellees.

No. 14–10–00186–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 24, 2011.

George Frederick May, Houston, for
Appellant.

Jacqueline L. Taylor, Houston, for Appellees.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

In this appeal from a turnover order, appellant Charlita Ayllene Marrs raises two issues: (1) the trial court erred in ordering the turnover of her exempt wages paid directly to a bankruptcy trustee under a wage order; and (2) the trial court erred in adjudicating the substantive rights of the parties relating to the invalidity of a promissory note and owelty deed of trust in the turnover action. We reverse and render.

### I

On December 14, 2007, Charlita and Michael Dennis Marrs were divorced. Although the original divorce decree is not in the record, the record reflects that, among other things, the trial court ordered Charlita to pay $90,367.12 with interest to Michael's attorney, Jacqueline Taylor, for attorney's fees Michael incurred. In connection with the trial court's award of a judgment for attorney's fees to Taylor, Charlita was ordered to execute a real estate lien note secured by an owelty deed on the marital home. Apparently out of concern that a lien against a homestead may be invalid, Michael moved the trial court to reform the divorce decree. On February 26, 2008, the trial court vacated the earlier decree and signed a "Reformed Final Decree of Divorce" in which the trial court ordered that Michael's attorney, Jacqueline Taylor, was granted an unsecured judgment against Charlita for $90,367.12 with interest, representing seventy-five percent of Michael's attorney's fees and expenses.

The court also awarded $3,178.00 in costs to Michael.

In July 2008, Charlita filed a petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas in Houston. In the bankruptcy proceeding, Charlita filed a proposed plan in which her employer, Rice University, would pay a portion of her wages directly to the bankruptcy trustee to pay creditors. Consistent with the plan, the bankruptcy judge signed a wage order requiring Rice University to pay $1,560.00 each month out of Charlita's income to the trustee. The wage order was later amended to order Rice University to pay a total of $2,940.00 each month out of Charlita's income to the trustee.

In September 2009, Charlita filed a notice of voluntary dismissal of the Chapter 13 bankruptcy proceeding. Michael opposed the dismissal and moved to convert the case from a Chapter 13 to a Chapter 7 bankruptcy. On October 8, 2009, the bankruptcy court ordered Charlita's Chapter 13 bankruptcy proceeding dismissed, and ordered the trustee to immediately disburse the balance of any funds on hand, less approved administrative expenses, to Charlita.

Shortly thereafter, on October 13, 2009, Michael filed an application for turnover relief to require Charlita or the bankruptcy trustee to turn over at least $23,536.82 that remained with the trustee. Taylor also filed a petition for intervention as Michael's attorney in the divorce action against Charlita, to aid in satisfaction of the judgment in Taylor's favor for attorney's fees. In an amended petition, Taylor requested a temporary restraining order to prevent the bankruptcy trustee from disbursing any funds to Charlita or Charlita from spending, depositing, transferring, alienating, or gifting funds disbursed to her by the bankruptcy trustee. The trial

court granted the temporary restraining order and set the matter for hearing.

On November 13, 2009, the trial court held a hearing on the applications for turnover relief. The trial court also requested supplemental briefing concerning Charlita's argument in response that the original real estate lien note, which was executed and delivered to Taylor, was a promissory note that satisfied the judgment in favor of Taylor.[1] On January 20, 2010, the trial court signed an order granting turnover relief and ordering the bankruptcy trustee to place Charlita's remaining funds in the court registry for payment to Taylor.[2] The trial court also filed findings of fact and conclusions of law which included findings and conclusions that the original owelty deed was an illegal document and the real estate lien note was void and failed for lack of consideration.

## II

### A

We review the granting or denial of a turnover order for an abuse of discretion. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). Whether a turnover order is supported by evidence is a relevant consideration in determining if a trial court abused its discretion. *Id.* A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Id.* A trial court has no discretion, however, when determining what the law is, which law governs, or how to apply the law. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992); *Sanjar v. Turner,* 252 S.W.3d 460, 463 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Consequently, a trial

court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *See Lozano v. Lozano,* 975 S.W.2d 63, 66 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

The Texas turnover statute is a procedural device by which judgment creditors may receive aid from a court under its provisions if the judgment debtor owns nonexempt property that could not be readily be attached or levied on by ordinary legal process. *See* Tex. Civ. Prac. & Rem.Code § 31.002(a); *Beaumont Bank, N.A.,* 806 S.W.2d at 224. A court may order the debtor to turn over nonexempt property in the debtor's possession or subject to his or her control to a sheriff or constable for execution, otherwise apply the property to satisfy the judgment, or appoint a receiver to take possession of the property to sell it and pay the proceeds to the judgment creditor. Tex. Civ. Prac. & Rem.Code § 31.002(b). A court may not order the turnover of property that is "exempt from attachment, execution, or seizure for the satisfaction of liabilities." *See id.* § 31.002(a)(2). As a general rule, the party asserting an exemption bears the burden of establishing entitlement to the exemption. *Roosth v. Roosth,* 889 S.W.2d 445, 459 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

### B

In her first issue, Charlita contends the trial court erred in ordering the turnover of her wages because they were exempt. Specifically, she argues that her employer paid her wages directly to the bankruptcy trustee as ordered by the bankruptcy court and she did not receive,

---

1. The day before the November 13 hearing, Taylor filed a release of the real estate lien note and the owelty deed in the Fort Bend County records.

2. The bankruptcy trustee was named as a respondent, but he did not appear for the hearing and is not a party to this appeal.

voluntarily relinquish, or exercise control over the wages. Charlita also challenges certain of the trial court's findings of fact and conclusions of law relating to the turnover order.

Current wages have been exempt from garnishment in Texas at least since the current constitution was ratified in 1876. *See* Tex. Const. art. XVI, § 28. Current wages are also exempt from attachment, execution, or other seizure under the Property Code. *See* Tex. Prop.Code § 42.001(b)(1).[3]

█ Michael and Taylor generally acknowledge that current wages for personal services are exempt from attachment, execution, and seizure for the satisfaction of debts. But they argue that, once wages are received by the judgment debtor, they cease to be current and are no longer exempt upon being paid to and received by the wage earner. For this proposition, Michael and Taylor rely on *Cain v. Cain,* 746 S.W.2d 861 (Tex.App.-El Paso 1988, writ denied), and *Sloan v. Douglass,* 713 S.W.2d 436 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.). They further cite *Sloan* for the proposition that the exemption continues only until (1) the wages are due and in the possession of the debtor, or (2) upon the debtor's demand, could be in his possession. *Sloan,* 713 S.W.2d at 440.

However, Texas courts, including this court, have recognized that in 1989 the legislature added subsection (f) to the turnover statute, implicitly overruling the line of cases holding that wages were no longer "current" once they had been paid to and received by the debtor. *See Goebel v. Brandley,* 174 S.W.3d 359, 364–65 (Tex. App.-Houston [14th Dist.] 2005, pet. denied); *Burns v. Miller, Hiersche, Martens & Hayward, P.C,* 948 S.W.2d 317, 323

(Tex.App.-Dallas 1997, writ denied). Subsection (f) specifically provides that "[a] court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute...." Tex. Civ. Prac. & Rem. Code § 31.002(f). As the Texas Supreme Court explained, "[b]y prohibiting the turnover of the *proceeds* of property exempt under *any* statute, [section 31.002(f) ] necessarily prohibits the turnover of the proceeds of current wages." *Caulley v. Caulley,* 806 S.W.2d 795, 798 (Tex.1991).

Nevertheless, both parties also point to *Sloan* for the proposition that when determining whether wages have lost their exemption there must be a showing that the debtor voluntarily placed the wages with another and also retained control over them. *See Sloan,* 713 S.W.2d at 440. Even if we assumed that the reasoning in *Sloan* applies, we would conclude that the evidence Michael and Taylor point to does not satisfy the stated elements. In *Sloan,* the court held that even though a professional baseball player voluntarily agreed to a contract in which a portion of his wages were deferred for a period of years, he did not have the option of demanding the wages before they were due as provided in the contract. Thus, the court held, the deferred income remained current wages not subject to garnishment. *Id.* Similarly, in *Goebel v. Brandley,* this court held that a judgment debtor's purchase of savings bonds in her children's names through a payroll deduction, although voluntary, constituted a transfer of current wages and was therefore exempt under the Texas Uniform Fraudulent Transfer Act. 174 S.W.3d at 364. Moreover, the *Goebel* court noted it was undisputed that the debtor, like Charlita, did not receive the

---

3. Each of these protections for current wages contains an exception for child-support obli-gations or judgments, but this exception is not relevant here.

subject wages and did not deposit them into her bank account. *Id.* at 365–66.

In this case, Michael and Taylor argue that Charlita had control of her wages and then voluntarily directed how they were to be used by directing that her "disposable income" fund her voluntary Chapter 13 bankruptcy; thus, her wages were no longer exempt. They point to testimony provided at the hearing by Michael's bankruptcy attorney, Harold Parker, who testified as an expert on their behalf. Parker testified that a debtor voluntarily initiates a Chapter 13 bankruptcy proceeding, proposes the plan to allocate the debtor's money to the creditors, and could voluntarily dismiss the proceeding. He also testified that a judgment debtor has the right to choose between utilizing a wage withholding order to fund the bankruptcy or to pay the trustee directly, and that Charlita chose the wage withholding method. Thus, Parker opined, the bankruptcy funded by a wage order was no different than if Charlita had merely deposited the money in her bank account. Parker also opined that once the bankruptcy proceeding is dismissed, the court could exercise any type of garnishment or turnover because the funds are not current wages and "it's just like a bank account." But Parker also acknowledged that while Charlita's wages were deposited with the trustee, she could not write a check to access the wages, and, except for circumstances not present in Charlita's case, the trustee would have to get permission from the bankruptcy court to return the money to her. He also agreed that Charlita could not force the trustee to return the money to her without a dismissal of the proceeding. Additionally, Parker admitted that the portion of Charlita's salary that was directed to the bankruptcy trustee did not go directly to her.

Thus, Michael and Taylor put on evidence that Charlita voluntarily initiated a Chapter 13 bankruptcy proceeding, proposed the plan in which a portion of her wages were paid directly from her employer to the bankruptcy trustee to pay her creditors, and voluntarily dismissed the proceeding. But there was no evidence that Charlita could access that portion of her wages paid by the employer directly to the trustee without the approval of the bankruptcy court before the bankruptcy proceeding was dismissed. Further, the bankruptcy court's wage order expressly provided that the deductions "shall continue until further order of this [c]ourt," indicating that the court, not Charlita. controlled the proceeding. Likewise, the trial court's findings of fact included a finding that it was the bankruptcy court, not Charlita, that ultimately ordered the trustee to disburse to Charlita the funds remaining after the dismissal. Thus, the evidence does not support Parker's conclusion that the bankruptcy proceeding was no different than if Charlita had merely placed her wages in her bank account. Additionally, there is no probative evidence that Charlita controlled that portion of her wages sent directly to the trustee while the bankruptcy continued.

Once the bankruptcy proceeding was dismissed, however, and the remaining funds were ordered paid to Charlita, those funds arguably are no longer exempt. *See Burns*, 948 S.W.2d at 322 (stating that once a trustee pays or delivers trust assets out of a spendthrift trust, they are no longer exempt property under the turnover statute). Nevertheless, at that point, however, they become the proceeds or disbursements of exempt property, and thus are not subject to a turnover order. *See* Tex. Civ. Prac. & Rem.Code § 31.002(f); *Caulley*, 806 S.W.2d at 798. Michael and Taylor cite *Clark v. Commercial State Bank*, No. MO–00–CA–140, 2001 WL 685529 (W.D.Tex. Apr. 16, 2001), as sup-

port for the argument that, after the bankruptcy case is dismissed prior to confirmation (as apparently occurred here), funds held by a Chapter 13 trustee are subject to garnishment. But *Clark* is distinguishable because it involved a garnishment rather than a turnover, and this court has declined to apply section 31.002(f) of the turnover statute to garnishment actions. *See, e.g., Am. Express Travel Related Servs. v. Harris,* 831 S.W.2d 531, 533 (Tex. App.-Houston [14th Dist.] 1992, no writ). Moreover, *Clark* did not discuss or address the Texas statutory exemption for current wages.

On this record, therefore, we hold that the trial court abused its discretion by signing the turnover order and we sustain Charlita's first issue. Having determined that the turnover order was improper, we decline to address Charlita's second issue.

\* \* \*

Having sustained Charlita's dispositive issue, we reverse the turnover order that the trial court signed on January 20, 2010, and render a take-nothing judgment in this turnover proceeding. *See Ross v. Nat'l Ctr. for the Employment of the Disabled,* 201 S.W.3d 694, 695 (Tex.2006).